**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**POLYTECH, INCORPORATED, and Terence McGowan d/b/a Polytech, Incorporated, Respondents.**

**No. 71-1645.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 18, 1972.

Decided Dec. 8, 1972.

Elliott Moore, Atty., N.L.R.B., Washington, D. C., for petitioner.

Elton L. French, St. Louis, Mo., for respondents.

Before HEANEY and STEPHENSON, Circuit Judges, and BOGUE, District Judge.*

STEPHENSON, Circuit Judge.

The NLRB applies for enforcement of its order, reported at 186 NLRB No. 148. The Board found respondent Polytech, Incorporated in violation of Sections 8(a)(5) and (a)(1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. In view of the Supreme Court's recent decision in NLRB v. Burns Int'l Security Services, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), the Board is not seeking enforcement of its order insofar as it requires respondents to abide by the provisions of the collective bargaining agreement in effect at the time respondent took over its business. The principal question presented on review is whether respondent Polytech, Incorporated was a successor company to Polytech Company and thus obligated to recognize the incumbent union and bargain collectively with them. More particularly, questions raised are whether: (1) the Polytech Company ever lawfully recognized the union; (2) there was a "continuity of operations" following the takeover and (3) respondent violated § 8(a)(1) by unlawfully promising benefits to its employees.

In 1966 Terence McGowan organized and incorporated an enterprise known as Polytech Company. In August 1968, Arundale Manufacturers, Inc., purchased a controlling interest in Polytech Company. McGowan retained a 49% interest, served as its president and actively worked as an instructor or advisor in production processes. Polytech continued to engage in its business of casting sheet plastic and the fabrication of plastic parts. Most of the fabricating was carried on at ECM, a Polytech facility operating at another site. The sheet plastic was fabricated into green filter plates and cover plates for arc welder's helmets, each of which constituted about 40% of Polytech Company's sales during the last 6 months of its existence.

Polytech Company recognized the International Association of Machinists and Aerospace Workers Union as the bargaining representative of all of its production employees in November 1968. The Union was already the bargaining representative of Arundale employees. Polytech Company and the Union entered into a contract covering these employees which was to run from January 1, 1969 through December 31, 1970. This contract was negotiated with the Union by someone other than McGowan. However, in March or April of 1969 McGowan signed a letter agreeing to representation of the employees by the Union at the ECM facility.

Several weeks before June 15, 1969, the operations of ECM Manufacturing Company terminated and on June 15, 1969 all operations of Polytech Company ceased. At this time Polytech Company had 13 production employees, all of whom were discharged.

On July 12, 1969, McGowan and his wife Joyce entered into an agreement with Arundale and Polytech Company pursuant to which the McGowans exchanged their stock interest in Polytech Company for most of the machinery and equipment of Polytech Company. Arundale agreed to lease the real property on which Polytech Company was located to the McGowans.

---

* District of South Dakota, sitting by special designation.

On July 12, 1969, McGowan commenced operations at the same site under the name Polytech Incorporated. McGowan solicited former employees of Polytech Company to come to work for Polytech, Inc. and hired all of those he reached who wanted jobs. On July 22, 1969 McGowan had hired 8 production employees, 5 of whom were former Polytech Company employees. One of these worked only one day. By July 31, 1969 Polytech, Inc. had 10 employees, 4 of whom were former Polytech Company employees.

Polytech, Inc. concentrated its efforts on the casting of plastic sheets. Almost all of the equipment used in this process had been included in the transfer of July 12 from Arundale and Polytech Company to McGowan. About 90 percent of the transferred equipment is presently in use at Polytech, Inc. Polytech, Inc. does not manufacture the green filter plate which Polytech Company did, but does make the cover plate and sells it to the same customers. Through November 1969, the cover plate sales represented 78% of Polytech, Inc.'s total sales. The sale of unfabricated sheet plastic represents 13% of Polytech, Inc.'s sales volume while it was only 1% of Polytech Company's sales. Most of the fabrication process carried on by Polytech Company has not been carried on by Polytech, Inc.

On July 23, 1969, Union representative James Bagwell visited Polytech, Inc., requesting recognition, and that Polytech, Inc. honor the union—Polytech Company contract. McGowan refused both requests. The next day the charge in this case was filed.

On August 4, 1969, immediately following a second attempt at recognition by Bagwell, McGowan held a meeting with his employees. While no concrete offers of specific benefits were made to the employees by McGowan, he did tell them that he did not intend to take things away from them that they had in the past. Mrs. McGowan, in response to a question by an employee, indicated that if the employees were to receive certain benefits they would not need a union.

The Board found that Polytech, Inc. was a successor-employer to Polytech Company and that by refusing to recognize the union as the representative of the employees it violated Section 8(a)(5) of the Act. The Board also found that on August 4, 1969, respondent violated § 8(a)(1) by conveying promises of benefits to employees to discourage them from engaging in union activities.

I.

Respondent contends that it should not be required to recognize the Union because there was no showing of legal recognition of the Union by Polytech Company. Thus, even if successorship is found, there would be no duty to recognize an illegally recognized Union. This claim was not raised until April, 1971, in a Petition to Reopen the Record Based on Newly Discovered Evidence. Respondent clearly failed to comply with § 10(e) [1] by not showing that the "newly discovered evidence" was not available at the time of the hearing before the Board or that it could not have been obtained and adduced with the exercise of reasonable diligence by Respondents' former attorney. NLRB v. May Dept. Stores, 154 F.2d 533, 540 (C.A.8, 1946), cert. denied, 329 U.S. 725, 67 S.Ct. 72, 91 L.Ed 627.

II.

Respondent asserts that the Board's determination that Polytech, Inc. was a successor to the Polytech Company is not supported by substantial evidence. Polytech, Inc. argues that there was no

---

1. "If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such additional evidence in the hearing before the Board . . . the court may order such additional evidence to be taken before the Board . . . . ."

continuity of operations because (1) there was no employee identity between the work force composition of Polytech, Inc. and Polytech Co.; (2) there was an approximately 4 week hiatus between operations, and (3) the nature of Polytech, Inc.'s business was substantially different from that of Polytech Company.

■ When employees have bargained collectively with an employer and there occurs a change of ownership not affecting the essential nature of the enterprise, the successor employer must recognize the incumbent union and deal with it as the bargaining representative. Tom-A-Hawk Transit, Inc. v. NLRB, 419 F.2d 1025, 1026–1027 (C.A.7, 1969); Overnite Transportation Co. v. NLRB, 372 F.2d 765 (C.A.4, 1967). A mere change of employers or of ownership in the employing industry is not a circumstance which will affect the bargaining relationship *if a majority of employees after the change of ownership or management were employed by the preceding employer.* NLRB v. Burns Security Services, 406 U.S. 272 at 279, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972) (citing cases). However, where a substantial change in the nature of the business operations is affected as a result of the changed ownership, the new employer need not bargain with the union. NLRB v. Interstate 65 Corporation, 453 F.2d 269 (C.A.6, 1971).

■ The test is whether there was continuity in the nature and functions between the predecessor and the successor, and the critical question in determining if the employer is a "successor," is whether the employing industry is substantially the same after transfer of ownership. NLRB v. Zayre Corp., 424 F.2d 1159, 1162 (C.A.5, 1970); NLRB v. Valleydale Packers, Inc., 402 F.2d 768 (C.A.5, 1968).

■ At the time of the Union's request for recognition, Polytech, Inc. had 7 production employees, 4 of whom were formerly employed by Polytech Company. Under *Burns* it is the number of new employees and whether they are a majority that is important. The fact that the four employees were not a majority of the 13 employees who were discharged when Polytech Company went out of business is persuasive but not decisive. The fact that McGowan attempted to contact and hire all of Polytech Company's former employees shows at least a desire to retain employee identity. Furthermore, where a majority of the new employees are employed by the predecessor, this has been held to constitute a retention of employee identity. See Emerald Maintenance, Inc. v. NLRB, 464 F.2d 698 (C.A.5, 1972) (37 of 47); Tom-A-Hawk Transit, Inc. v. NLRB, 419 F.2d 1025 (C.A.7, 1969) (14 of 24); NLRB v. Interstate 65 Corp., 453 F.2d 269 (C.A.6, 1971) (50 of 60); C. G. Conn, Ltd. v. NLRB, 197 NLRB No. 84 (1972) (48 of 93) and Maintenance, Inc., 148 NLRB 1299, 1301–02 (1964).

■ Respondent points to the four week interruption as evidence of nonsuccessorship. In *Burns* and other cases cited by Respondent there was no such gap. This too, does not persuade us. Respondent cites no cases nor have we found any which make an interruption of operations between employers a determining factor in finding nonsuccessorship. Indeed, the Board has recently found that a break as long as four and one-half months did not determine that the new employer was not a successor. C. G. Conn, Ltd. v. NLRB, 197 NLRB No. 84 (1972). A time lapse between the close of business and the takeover is only one factor to be considered in determining successorship. Here we are satisfied that it was insignificant.

Polytech, Inc. urges that there was no continuity of operations because its business was substantially different from that of Polytech Company. Discontinuation of some products by Polytech, Inc. is cited. Polytech Company casted and fabricated sheet plastic. Essentially, Polytech, Inc. continued doing the same thing. Although Polytech, Inc. does not produce the green filter plate,

the "essential nature of the enterprise" —that of casting and fabricating sheet plastic—is the same. Indeed, one of Polytech Company's former products (cover plates) now represents 78% of Respondent's sales by volume.

Perhaps most persuasive in finding successorship is the purhase by McGowan of Polytech Company's physical assets. Other Courts have consistently found successorship where the new employer purchases a part of all of the assets of the predecessor employer. NLRB v. Interstate 65 Corp., 453 F.2d 269 (C.A.6, 1971); NLRB v. McFarland, 306 F.2d 219 (C.A.10, 1962); Ranch-Way Inc. v. NLRB, 445 F.2d 625 (C.A.10, 1971). When this is accompanied with a continuation of the same types of product lines, employee identity, and job functions, there is strong evidence of successorship. NLRB v. Zayre Corp., 424 F.2d 1159, 1162 (C.A.5, 1970). We are satisfied the evidence in this record amply supports the Board's finding that Polytech, Inc. was a "successor" to Polytech Co. We enforce the bargaining order.

### III.

Respondent further contends that the statements made by McGowan and his wife at the August 4, 1969 meeting did not violate Section 8(a)(1) of the Act because they were (1) not made during an organizing campaign by the union and (2) protected free speech under Section 8(c) of the Act. Mr. McGowan's statement that he did not intend to take any benefits away from the employees that they had obtained from Polytech Co., and Mrs. McGowan's comment that if the employees received similar benefits they would not need a union, fall within the "promise of benefit" clause of 8(c). The statements implicitly promised that the employees would receive benefits at least equal to those under the Polytech Company's contract with the union. NLRB v. Dixisteel Buildings, Inc., 445 F.2d 1260 (C.A.8, 1971); NLRB v. Douglas & Lomason Co., 443 F.2d 291 (C.A.8, 1971).

The Board's order is hereby enforced, except with respect to its finding of violation of Section 8(a)(5) by Respondent in refusing to honor the collective bargaining agreement.