**VALMAC INDUSTRIES, INC.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 78–1677.

United States Court of Appeals,
Eighth Circuit.

Submitted April 17, 1979.

Decided May 15, 1979.

Jack A. McNulty, Bridges, Young, Matthews & Davis, Pine Bluff, Ark., for petitioner.

Michael Messitte, Atty., N.L.R.B., Washington, D.C., for respondent; John G. Elligers, Atty., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., on brief.

Before LAY, HEANEY and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

Valmac Industries petitions this Court to review and set aside an order of the National Labor Relations Board, which found that Valmac had violated §§ 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* The Board cross-appeals,

requesting enforcement of its order. The Board's decision and order are reported at 237 NLRB No. 147, 99 L.R.R.M. 1193 (1978). We view the Supreme Court's decisions in *Bayside Enterprises, Inc. v. NLRB*, 429 U.S. 298, 97 S.Ct. 576, 50 L.Ed.2d 494 (1977), and *NLRB v. Burns Security Services*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), and our decision in *N.L.R.B. v. Polytech, Incorporated*, 469 F.2d 1226 (8th Cir. 1972), as controlling, and grant the Board's petition for enforcement of its order requiring Valmac to bargain with Teamsters Local Union No. 878.

The relevant facts are largely undisputed. In 1965, the Teamsters were certified by the Board as the collective bargaining agent of a unit of feed mill employees and drivers at a Clarksville, Arkansas, poultry processing plant owned by Swift and Company. In 1966, it was similarly certified for a unit of live chicken haulers and chicken catchers at a Swift plant in Bloomer Arkansas. The Teamsters and Swift negotiated a number of collective bargaining agreements covering the unit employees. The most recent were separate three-year agreements from July 29, 1974, to July 29, 1977.

On May 4, 1977, Valmac agreed to purchase certain Swift facilities, including the two Arkansas plants at issue here. Swift ceased operating the plants on May 27, and Valmac began production in both plants a few days later.

Valmac took applications for employment at both plants and sent applications to the employees who worked at the plants for Swift. The Clarksville feed mill was staffed during the first week of operation under Valmac with twelve employees, ten of whom had been Swift employees. During the next ten weeks, at least eight former Swift employees continued to be employed. During the same period, Valmac employed four live chicken drivers at Bloomer, all of whom had been employed by Swift in the same job classification.

On July 29, 1977, the Teamsters wrote to Valmac demanding recognition as the collective bargaining representative for the Clarksville feed mill employees and the Bloomer live chicken drivers. Valmac replied a few days later that it had no obligation to recognize either demand. It thereafter maintained this position.

The Teamsters Union filed an unfair labor practice charge on November 2, 1977, charging a refusal to bargain. A complaint containing the same allegation was issued about three weeks later. On May 19, 1978, the Administrative Law Judge issued his findings and recommended order. On August 25, 1978, the Board affirmed those findings and adopted the recommended order.

The Board found Valmac to be a successor to Swift. It viewed the following facts as being decisive: (1) all the live chicken drivers at Clarksville and a majority of the feed mill employees at Bloomer were former employees of Swift; (2) there was virtually no hiatus in operations as a result of the takeover; (3) Valmac used the same equipment that had been used by Swift, and in substantially the same way; and (4) Valmac produced the same product for the same purposes as had Swift. The Board also found that the live chicken drivers employed at Clarksville were not agricultural laborers and, thus, excluded from the Board's jurisdiction by § 2(3) of the Act, 29 U.S.C. § 152(3).

Valmac argued to the Board, and now argues to this Court, that the "successorship doctrine" set forth in *NLRB v. Burns Security Services, supra*, should be applied only where there has been a recent election in which the employees involved have selected the union as their exclusive bargaining agent; and that since the certifications here are "ancient," 1965 and 1966, respectively, bargaining orders should not be issued.

We cannot accept this argument. In *N.L.R.B. v. Polytech, Incorporated, supra*, we stated:

When employees have bargained collectively with an employer and there occurs a change of ownership not affecting the essential nature of the enterprise, the successor employer must recognize the in-

cumbent union and deal with it as the bargaining representative. * * * A mere change of employers or of ownership in the employing industry is not a circumstance which will affect the bargaining relationship *if a majority of employees after the change of ownership or management were employed by the preceding employer.* * * * However, where a substantial change in the nature of the business operations is affected as a result of the changed ownership, the new employer need not bargain with the union. * * *

The test is whether there was continuity in the nature and functions between the predecessor and the successor, and the critical question in determining if the employer is a "successor," is whether the employing industry is substantially the same after transfer of ownership. * *

At the time of the Union's request for recognition, Polytech, Inc. had 7 production employees, 4 of whom were formerly employed by Polytech Company. Under *Burns* it is the number of new employees and whether they are a majority that is important. * * * The fact that McGowan attempted to contact and hire all of Polytech Company's former employees shows at least a desire to retain employee identity. Furthermore, where a majority of the new employees are employed by the predecessor, this has been held to constitute a retention of employee identity. * * *

* * * * * *

Perhaps most persuasive in finding successorship is the purchase by McGowan of Polytech Company's physical assets. * * When this is accompanied with a continuation of the same types of product lines, employee identity, and job functions, there is strong evidence of successorship. [Emphasis included.]

*Id.* at 1230–1231.

If anything, this case is a stronger one than that which was presented in *Polytech.* Here, both units were certified and the collective bargaining relationship continued

without interruption for at least eleven years. In *Polytech,* there had never been an election and the contractual relationship between the selling employer and the union representing the employees was of less than a year's standing.

Application of the successorship doctrine to these facts is supported by *Pacific Hide & Fur Depot, Inc. v. N.L.R.B.,* 553 F.2d 609 (9th Cir. 1977); *Stockton Door Co., Inc.,* 218 NLRB No. 156, 89 L.R.R.M. 1428 (1975), *enf'd,* 547 F.2d 489 (9th Cir. 1976), *cert. denied,* 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 95 (1977); *Zim's Foodliner, Inc. v. N.L.R.B.,* 495 F.2d 1131, 1138–1142 (7th Cir.), *cert. denied,* 419 U.S. 838, 95 S.Ct. 66, 42 L.Ed.2d 65 (1974). The last case also notes that the four dissenters in *Burns* refused to apply the "successorship doctrine" primarily because they felt that the absence of any transfer of assets between the predecessor and *Burns* should preclude successorship. *Zim's Foodliner, Inc. v. N.L.R.B., supra* at 1138 n. 9. Here, there was a transfer of assets.

Valmac argues that we should refuse to enforce the Board's order because the employees of Valmac at the plants in question filed a decertification petition with the Board, and a lawsuit in federal District Court in Arkansas against the Board for its refusal to accept the petition. It points out that the employees state in an exhibit to the complaint filed in federal court that they do not want to belong to the Union.

■ We are unwilling to accept this argument. The question before us must be judged on the state of facts which existed at the time that Valmac refused to bargain. As of that date, there is no showing that the employees had indicated in any way that they did not desire to be represented by the union that had represented them for many years. Our holding in this regard does not, of course, preclude the employees from filing a decertification petition at some appropriate time in the future, after Valmac has fulfilled its obligation to bargain in good faith, and the effects of the present unfair labor practice are no longer present.

We find no merit to Valmac's argument that the live chicken drivers are not employees within the meaning of the National Labor Relations Act. There was substantial evidence from which the Board could conclude that because they transported products away from the farm, their work was neither "primary" nor "secondary" farming. *See Bayside Enterprises, Inc. v. NLRB, supra,* 429 U.S. at 300 n. 7, 97 S.Ct. 576. We are unable to distinguish this case from the facts presented in *Bayside.*

The Board's order is, therefore, enforced.