NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WINCO PETROLEUM COMPANY and
Cooper Oil Company, Inc., Successor
Employer, Respondents.

No. 80–2147.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1981.

Decided Jan. 20, 1982.

Rehearing Denied Feb. 23, 1982.

Robert Sewell, Ruah D. Lahey, Attys., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., for petitioner.

Richard E. Jaudes, Bradley S. Hiles, Peper, Martin, Jensen, Maichel and Hetlage, St. Louis, Mo., for respondent Cooper Oil Co., Inc.

Before STEPHENSON and McMILLI-AN, Circuit Judges, and GIBSON, Senior Circuit Judge.

McMILLIAN, Circuit Judge.

The National Labor Relations Board (the Board) petitions this court for enforcement of its supplemental order issued against Cooper Oil Co. (Cooper Oil), as the successor to Winco Petroleum Co. (Winco), requiring Cooper Oil to remedy certain unfair labor practices committed by Winco before Winco was acquired by Cooper Oil. The Board's supplemental decision and order is reported at 252 N. L. R. B. 1049 (1980); the initial decision and order against Winco is reported at 241 N. L. R. B. 1118, 101 L.R.R.M. 1100 (1979). For the reasons discussed below, we grant the Board's petition for enforcement against Cooper Oil.

*Background Facts*

Successorship cases are fact-intensive. As noted by the Supreme Court in *Howard Johnson, Inc. v. Detroit Local Joint Executive Board*, 417 U.S. 249, 254, 94 S.Ct. 2236, 2239, 41 L.Ed.2d 46 (1974), "[p]articularly in light of the difficulty of the successorship question, the myriad factual circumstances and legal contexts in which it can arise, and the absence of congressional guidance as to its resolution, emphasis on the facts of each case as it arises is especially appropriate." *See also International Union of Electrical, Radio & Machine Workers v. NLRB*, 196 U.S.App. D.C. 25, 604 F.2d 689, 694 (1979).

Winco owned and operated three self-service APCO gasoline stations in Missouri. The real estate and equipment at these three stations was owned by Twin City Oil Co. (Twin City). Both Winco and Twin City were owned by Wilmer Buechting, Sr. and his family. Cooper Oil, owned by William Cooper (Cooper), owns and operates over twenty Derby gasoline stations in central Missouri and southern Illinois. Cooper has known Wilmer Buechting, Sr. for more than ten years, and both men are members of the Mid-America Gasoline Marketers Association. Cooper has known Wilmer Buechting, Jr. for several years.

In the spring of 1977, Wilmer Buechting, Sr. considered selling Winco and Twin City to Cooper. Wilmer Buechting, Sr. provided Cooper with the financial reports of both companies for the last fiscal year. However, Wilmer Buechting, Sr. eventually sold Winco to his son, Wilmer Buechting, Jr.

During the summer of 1977, the union (Local 618 of the Automotive, Petroleum & Allied Industries Employees Union, affiliated with the Teamsters) conducted an organizational campaign among the employees at the three Winco gasoline stations. This campaign was successful. On August 26, 1977, the union presented Winco with authorization cards signed by a majority of the Winco employees (12 of 19). Winco voluntarily recognized the union as the exclusive bargaining representative and began contract negotiations. A short time later, Winco repudiated its voluntary recognition of the union, refused to continue further bargaining, and engaged in a variety of activities to discourage union support and activity. As a result the union filed unfair labor practice charges with the Board against Winco in September and November of 1977.

Following an administrative hearing, the administrative law judge (ALJ) issued a decision finding that Winco had committed several unfair labor practices in violation of § 8(a)(1), (3), and (5) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 *et seq.*, by discriminatorily discharging one employee (Judy Oster), by discriminatorily reducing the working hours of several employees (Judy Oster, Betty Meyer, Gloria Broombaugh), by taking other actions to discourage union support among its employees, and by repudiating and refusing to negotiate with the union. The ALJ's decision was issued in October, 1978. In November, 1978, Winco offered to reinstate Judy Oster. In December, 1978, Winco filed its exceptions to the ALJ's decision.

In January, 1979, Wilmer Buechting, Sr. telephoned Cooper and renewed the offer to sell Winco and Twin City. Wilmer Buechting, Sr., Wilmer Buechting, Jr. and Cooper met several times to discuss the sale. The

Buechtings provided Cooper with certain financial information. The ALJ in the supplemental proceeding expressly found that the Buechtings provided Cooper with the 1978 financial reports for Winco and Twin City; the 1978 Winco financial report included an expenditure for about $24,000 in legal fees for the unfair labor practice litigation. By late January, the parties had agreed to sell. On March 6, 1979, the parties executed the purchase agreement. Cooper Oil retained the former Winco employees at the same positions and continued operations at the former Winco stations without substantial change or interruption, using the same equipment, employees, and supervisor. On March 7, 1979, Cooper Oil authorized pay increases for the former Winco employees and appointed station managers and assistant station managers at the former Winco stations.

Cooper Oil operated the former Winco stations as Winco until April 2, 1979, when Winco and Twin City were merged into Cooper Oil. At this time Cooper Oil employed three former Winco employees as managers at the former Winco stations and, of the sixteen nonsupervisory employees assigned to the former Winco stations, twelve had been Winco employees before the March 6 acquisition of Winco by Cooper Oil.

On April 24, 1979, less than a month after the merger, the Board affirmed the ALJ's decision ordering Winco to cease and desist, to post certain notices, and to take affirmative action, including reinstating Judy Oster, paying backpay to several employees, and bargaining with the union. 241 N. L. R. B. 1118, 101 L. R. R. M. 1100 (1979). Cooper received notice of the Board's decision and a bill for attorneys' fees for the labor litigation in early May, 1979. Cooper requested further explanation by letter from the Board, claiming that he had had no prior knowledge of the unfair labor prac-

tice proceedings against Winco before May, 1979. As discussed below, the question of actual knowledge was addressed in the supplemental proceeding and expressly resolved against Cooper.

On November 7, 1979, the Board issued a backpay specification and notice of hearing against Winco and Cooper Oil, alleging Cooper Oil was liable as Winco's successor to remedy Winco's unfair labor practices. A supplemental hearing was held in December, 1979. The parties stipulated that the amount of backpay owed to Judy Oster was $7,606.30, to Betty Meyer, $510.68, and to Gloria Broombaugh, $551.50. The ALJ issued a supplemental decision in June, 1980, which was affirmed and adopted by the Board on September 30, 1980. 252 N. L. R. B. 1049 (1980). The Board found that Winco had voluntarily recognized the union and later unlawfully repudiated and refused to bargain with the union, that Cooper Oil had purchased Winco with actual knowledge of Winco's unfair labor practices and pending labor litigation and operated the former Winco stations with the same employees without substantial change, that a majority of the employees at the former Winco stations were former Winco employees (12 of 16 during the week ending April 4, 1979; 13 of 15 during the week of July 30, 1979), that the employees at the former Winco stations remain an appropriate bargaining unit, and that Cooper Oil as the successor to Winco was obligated to remedy Winco's unfair labor practices. Included in the remedial order was a bargaining order, which the Board expressly based on both the principles of *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), and Winco's voluntary recognition of the union. 252 N. L. R. B. at 1049 n.2.

*Successorship* [1]

The Board's finding that Cooper Oil was a successor to Winco and obligated to reme-

1. As noted in *Howard Johnson Co. v. Detroit Local Joint Executive Bd.*, 417 U.S. 249, 263 n.9, 94 S.Ct. 2236, 2243 n.9, 41 L.Ed.2d 46 (1974) (citations omitted):

The question whether Howard Johnson [, the acquiring company,] is a "successor" is simply not meaningful in the abstract. Howard

Johnson is of course a successor employer in the sense that it succeeded to operation of a restaurant and motor lodge formerly operated by the Grissoms [, the prior employers]. But the real question in each of these "successorship" cases is, on the particular facts, what are the legal obligations of the new

dy the unfair labor practices committed by Winco was based upon *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973), and *Perma Vinyl Corp.,* 164 N.L.R.B. 968 (1967), *enforced sub nom. United States Pipe & Foundry Co. v. NLRB,* 398 F.2d 544 (5th Cir. 1968). In *Golden State,* All American Beverages, Inc. had bought Golden State's soft drink bottling and distribution business with knowledge of an outstanding Board order against Golden State for unlawfully discharging an employee and, after the acquisition, continued to carry on the business without interruption or substantial changes in the method of operation, employee complement, or supervisory personnel. 414 U.S. at 171, 94 S.Ct. at 418. The Court held that under § 10(c) of the Act, the Board could require the successor employer to remedy an unfair labor practice committed by the predecessor employer, even though the successor did not commit the unfair labor practice where the successor employer acquired the enterprise with knowledge of the labor litigation and continued to operate the enterprise without substantial change or interruption. *Id.* at 179–86, 94 S.Ct. at 422–426; *cf. Howard Johnson, Inc. v. Detroit Local Joint Executive Board, supra,* 417 U.S. at 263, 94 S.Ct. at 2243 (in context of action to compel arbitration against successor employer, the requisite substantial continuity of identity in the business enterprise before and after the change in ownership necessarily includes substantial continuity in the identity of the workforce, that is, whether the successor employer has hired a majority of the former employer's employees). As explained by the Court,

> [W]hen a new employer ... has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations, those employees who have been retained will understandably

view their job situations as essentially unaltered. Under these circumstances, the employees may well perceive the successor's failure to remedy the predecessor's unfair labor practices ... as a continuation of the predecessor's labor policies. To the extent that the employees' legitimate expectation is that the unfair labor practices will be remedied, a successor's failure to do so may result in labor unrest as the employees engage in collective activity to enforce remedial action. Similarly, if the employees identify the new employer's labor policies with those of the predecessor but do not take collective action, the successor may benefit from the unfair labor practices due to a continuing deterrent effect on union activities. ...

> Avoidance of labor strife, prevention of a deterrent effect on the exercise of rights guaranteed employees by § 7 of the Act, and protection for the victimized employee—all important policies subserved by the National Labor Relations Act—are achieved at a relatively minimal cost to the bona fide successor. Since the successor must have notice before liability can be imposed, "his potential liability for remedying the unfair labor practices is a matter which can be reflected in the price he pays for the business, or he may secure an indemnity clause in the sales contract which will indemnify him for liability arising from the seller's unfair labor practices."

414 U.S. at 184–85, 94 S.Ct. at 425, *citing Perma Vinyl Corp., supra,* 164 N.L.R.B. at 969.

▮ In determining whether a particular employer is a successor obligated to remedy the unfair labor practices of its predecessor employer, the Board must balance the conflicting legitimate interests of the new employer, the public, and the em-

employer to the employees of the former owner or their representative? The answer to this inquiry requires analysis of the interests of the new employer and the employees and of the policies of the labor laws in light of the facts of each and the particular legal obligation which is at issue, whether it be the

duty to recognize and bargain with the union, the duty to remedy unfair labor practices, the duty to arbitrate, etc. There is, and can be, no single definition of "successor" which is applicable in every legal context. A new employer, in other words, may be a successor for some purposes and not for others.

ployees. *Golden State Bottling Co. v. NLRB, supra,* 414 U.S. at 181, 94 S.Ct. at 423. The balancing process includes an emphasis upon protection for the victimized employee, who is " 'now without meaningful remedy when title to the employing business changes hands.' " *Id., citing Perma Vinyl Corp., supra,* 164 N.L.R.B. at 969. The Court found support for such an emphasis upon the employee in *John Wiley & Sons v. Livingston,* 376 U.S. 543, 549, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964): "The objectives of national labor policy, reflected in established principles of federal law, require that the rightful prerogative of owners independently to rearrange their businesses and even eliminate themselves as employers be balanced by some protection to the employees from a sudden change in the employment relationship."

We conclude that the Board properly determined that Cooper Oil was a successor to Winco and obligated to remedy Winco's unfair labor practices. The Board based its decision upon the following findings: (1) Cooper Oil acquired Winco with actual knowledge of Winco's pending unfair labor practice charges, (2) there was little or no interruption in business operations at the three Winco stations as a result of the acquisition, (3) Cooper Oil continued to operate the enterprise without substantial change, and (4) a majority of Cooper Oil's employees at the former Winco stations were former Winco employees. These findings are supported by substantial evidence on the record taken as a whole. *E.g., Universal Camera Corp. v. NLRB,* 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951).

*Actual Knowledge*

Cooper Oil argues that the finding of actual knowledge was based upon improper inferences and credibility determinations by the Board. We disagree. Credibility determinations are primarily matters for decision by the trier of fact. *E.g., NLRB v. Intertherm, Inc.,* 596 F.2d 267, 271 (8th Cir. 1979). The ALJ made specific and individual ·credibility findings that were adopted by the Board. Cooper and the Buechtings testified that the labor proceedings were not mentioned during the sale negotiations; however, these denials were not credited by the ALJ. The ALJ instead reasonably inferred actual knowledge from the following findings, which are supported by substantial evidence: during the sale negotiations with Cooper, Wilmer Buechting, Sr. referred to "union problems" as one of his reasons for selling Winco; Winco's 1978 financial report included a large amount of legal fees and was shown to Cooper during the sale negotiations; Wilmer Buechting, Jr. referred to Cooper's awareness of the pending labor proceedings against Winco (according to credited testimony); Wilmer Buechting, Sr. stated that the union's organizational campaign and the labor proceeding against Winco were not a "secret"; and the proximity and similarity of the two enterprises (one Cooper Oil station was located in the same town as a Winco station; the original hearing was also held in this town).[2]

*Due Process*

Cooper Oil also argues that enforcement of the successorship liability order will deprive it of due process. Cooper Oil notes that the original unfair labor practice order against Winco was not enforced in the court of appeals and thus has not been subject to judicial review. Because the validity of the underlying unfair labor practices charges against Winco was not an issue in the supplemental proceedings, Cooper Oil argues that the Board should not be allowed to obtain enforcement against it as a successor without first seeking enforcement of the original order. *Compare Golden State Bottling Co. v. NLRB, supra,* 414 U.S. at 169 n.1, 94 S.Ct. at 418 n.1 (noting that the court of appeals had enforced the original order against the predecessor employer, Golden State, before the Board brought

---

**2.** The Board also found that the Buechtings and Cooper were in effect engaged in a legal maneuver to assist Cooper Oil in building a defense to defeat any prospective claim of successorship by asserting lack of prior knowledge by Cooper Oil of the pending labor proceedings against Winco. 252 N.L.R.B. at 1054.

proceedings against the successor employer, All American), *with United States Pipe & Foundry Co. v. NLRB, supra,* 398 F.2d at 546 (Board order against predecessor employer, Perma Vinyl, was not contested; no enforcement proceedings brought before successorship proceeding; court noted, however, that question of denial of due process by virtue of the successor's having been deprived of the right to defend the original charges before the Board was not before the court).

■ We are precluded from considering this due process objection, however, because Cooper Oil did not raise this argument before the Board and has not advanced any extraordinary circumstances to excuse its failure to do so.[3] 29 U.S.C. § 160(e); *e.g., Detroit Edison Co. v. NLRB,* 440 U.S. 301, 311–12 n.10, 99 S.Ct. 1123, 1129 n.10, 59 L.Ed.2d 333 (1979).

*Remedial Bargaining Order*

■ As noted above, the remedial order against Cooper Oil included a bargaining order based both on *Gissel Packing* and Winco's voluntary recognition of the union as the exclusive bargaining representative. Our review of remedial orders is limited; the Board has broad discretion to fashion remedies to effectuate the policies of the Act. *See, e.g., Fibreboard Paper Products Corp. v. NLRB,* 379 U.S. 203, 215–16, 85 S.Ct. 398, 405, 13 L.Ed.2d 233 (1964). Cooper Oil argues that the bargaining order was improper for several reasons and should not be enforced. We disagree.

The Board issued the bargaining order against Cooper Oil as a successor employer in order to remedy an unfair labor practice committed by Winco. The Board did not proceed *directly* against Cooper Oil for refusing to bargain with the union. This distinction between the independent obligation of a successor employer to bargain with the bargaining representative and the derivative obligation of a successor employer to bargain with the bargaining representative in order to remedy the predecessor employer's unlawful refusal to bargain was recognized in *NLRB v. Cott Corp.,* 578 F.2d 892, 894 (1st Cir. 1978). *Compare Bellingham Frozen Foods, Inc. v. NLRB,* 626 F.2d 674, 678–90 (9th Cir. 1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981); *Valmac Industries, Inc. v. NLRB,* 599 F.2d 246, 247–48 (8th Cir. 1979); *NLRB v. Fabsteel Co.,* 587 F.2d 689, 693–94 (5th Cir.), *cert. denied,* 442 U.S. 943, 99 S.Ct. 2887, 61 L.Ed.2d 313 (1979). In *Cott* the court refused to enforce a *Gissel Packing* bargaining order against a successor employer because the circumstances which originally had supported the bargaining order against the former employer had fundamentally changed by the time of the enforcement proceedings against the successor employer. 578 F.2d at 894–95. As noted by the court, the former employer whose misconduct had prejudiced the representation election and made a fair rerun election impossible and the former employees who had been adversely affected by the former employer's misconduct were no longer on the scene at the time of the enforcement

**3.** We are not persuaded by Cooper Oil's argument that it could not have raised the due process issue before the Board because it did not know that the Board would not seek enforcement of the original order against Winco before proceeding against Cooper Oil in the supplemental proceeding. With respect to the order against Winco, it would appear that Cooper Oil could have participated in the proceedings before the Board, 29 C.F.R. § 102.48 (motion to reopen the record or for reconsideration), .65(b) (motion to intervene). Moreover, Cooper Oil could have sought judicial review as an aggrieved party under § 10(f) of the Act, 29 U.S.C. § 160(f) (petition to review and set aside Board order).

With respect to the successorship proceedings, the procedural safeguards set out in *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 180, 94 S.Ct. 414, 423, 38 L.Ed 2d 388 (1973), *citing Perma Vinyl Corp.,* 164 N.L.R.B. 968, 969 (1967), *enforced sub nom. United States Pipe & Foundry Co. v. NLRB,* 398 F.2d 544 (5th Cir. 1968), were followed by the Board in the present case: Cooper Oil received notice of the backpay specification and supplemental proceeding, an opportunity to present evidence on the question whether it is a successor liable for remedying its predecessor's unfair labor practices, and an opportunity to be heard in the enforcement proceeding of the order issued against it.

proceeding against the successor employer.[4] *Id.*

■ The Supreme Court in *Golden State Bottling Co.* noted that a successor employer's obligation to remedy the unfair labor practices of its predecessor was not without limits:

A purchasing company cannot be obligated to carry out under § 10(c) [of the Act] every outstanding and unsatisfied order of the Board. For example, because the purchaser is not obligated by the Act to hire any of the predecessor's employees,[5] the purchaser, if it does not hire any or a majority of those employees, will not be bound by an outstanding order to bargain issued by the Board against the predecessor or by any order tied to the continuance of the bargaining agent in the unit involved.

414 U.S. at 184 n.6, *citing NLRB v. Burns International Security Services, Inc.,* 406 U.S. 272, 280–81 & n.5, 92 S.Ct. 1571, 1578 & n.5, 32 L.Ed.2d 61 (1972); *cf. Bellingham Frozen Foods, Inc. v. NLRB, supra,* 626 F.2d at 680–81 (court refused to enforce reinstatement order against successor employer where that order was an order tied to the continuance of the bargaining agent in the unit because the successor employer had hired all new employees in that bargaining unit).

We hold that the Board properly applied the principles of *Golden State Bottling Co.* in issuing the bargaining order against Cooper Oil in the present case. Here, Cooper Oil retained all the former Winco employees

---

4. In *NLRB v. Cott Corp.,* 578 F.2d 892 (1st Cir. 1978), the union had sought recognition from the former employer (Ponn Distributing Co.) and petitioned for a representation election after obtaining authorization cards from a majority of the Ponn employees. The union lost the election and filed unfair labor practice charges with the Board. In 1973 the Board found Ponn guilty of several unfair labor practices and, in addition to other relief, voided the election and issued a bargaining order against Ponn on the ground that Ponn's unlawful conduct had unfairly affected the election and made a fair rerun election impossible. The court of appeals granted enforcement against Ponn. However, some four days before the enforcement decision, Cott Corp. had foreclosed on Ponn's assets and taken over the business. Cott rehired all eight of the Ponn employees in the bargaining unit recognized by the Board. The opinion does not mention whether Cott had actual knowledge of the pending labor proceedings against Ponn or whether Cott continued the operation of the enterprise with little interruption or substantial change; presumably, this was the case. In any event, Cott bargained with the union without conceding a legal obligation to do so. By the time the Board had issued a show cause notice against Cott as a successor employer in 1975, a Cott employee had filed a decertification petition against the union and only one former Ponn employee was employed by Cott. By the time the Board had concluded supplemental proceedings against Cott and issued the bargaining order against Cott in 1977, none of the former Ponn employees was employed by Cott and of course the former employer had been displaced. There is no suggestion in the opinion that Cott had prompted the decertification petition or unlawfully discharged the former Ponn employees it had hired upon taking over the enterprise. The court determined that the time of the Board's show cause order against Cott was the relevant time because "the Board's final order was grounded not on any possible obligation Cott might have had under [*NLRB v.*] *Burns* [*Int'l Security Servs., Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972)] to recognize the previous representative of the employees it hired, but rather on Cott's obligation to remedy the unfair labor practices of its predecessor." *Id.* 578 F.2d at 895 (footnote omitted). The court refused to enforce the bargaining order because the basis for the bargaining order had disappeared by the time of the show cause order: the former employer had been replaced and the former employees (with one exception) had been replaced. 578 F.2d at 895–96.

5. Of course, the new employer cannot discriminate by hiring or retaining its predecessor's employees on the basis of union membership or activity or refuse to hire its predecessor's employees solely because they were union members or to avoid having to recognize the union. *See Howard Johnson, Inc. v. Detroit Local Joint Executive Bd., supra,* 417 U.S. at 262 n.8, 94 S.Ct. at 2243 n.8, *citing NLRB v. Burns Int'l Security Servs., Inc., supra,* 406 U.S. at 280–81 & n.5, 92 S.Ct. at 1578 & n.5; *see also Retail Clerks' Int'l Union, Local 655 v. Quick Shop Markets, Inc.,* 604 F.2d 581, 583–87 & nn.4 & 7 (8th Cir. 1979) (action by prior employer in concert with its franchisers to limit employees to 50% of those who worked for prior employer at time of representation election to avoid *Burns* characterized as obvious discriminatory concept).

upon its taking over the enterprise; the former Winco employees constituted a majority of Cooper Oil's employees in the relevant bargaining unit.[6] The record indicates that former Winco employees continued to constitute a majority of Cooper Oil's employees in this bargaining unit at the time of the backpay specification notice and supplemental proceedings against Cooper Oil. This factor alone distinguishes the present case from *Cott*, wherein only one of the former employer's employees remained in the employ of the new employer at the equivalent time. 578 F.2d at 894–95.

We think *Cott* is also distinguishable because the bargaining order in the present case was in part based on Winco's voluntary recognition of the union as the bargaining representative. Contrary to Cooper Oil's arguments, the Board's supplemental order against Cooper Oil expressly based the bargaining order on *both* the remedial principles of *Gissel Packing* and Winco's voluntary recognition of the union. *See* 252 N.L.R.B. at 1049 n.2. The decisions of both ALJs also refer to Winco's voluntary recognition of the union as the primary or principal basis for the bargaining order. *See id.* at 1055 (decision of ALJ); 241 N.L.R.B. at 1137 (decision of ALJ). To the extent that the court in *Cott* was reluctant to enforce a bargaining order "because the imposition of a bargaining agent on a unit on the basis of an earlier card majority presents some potential for thwarting the employees' wishes," 578 F.2d at 895, that objection does not apply with equal force when the bargaining order is based in part on the prior employer's voluntary recognition of the un-

ion, particularly when the former employees constitute a majority of the new employees in the bargaining unit and presumably continue to support the union.

■ Further, the fact that the bargaining order was in part based on Winco's voluntary recognition of the union, rather than prior certification by the Board, does not excuse Cooper Oil as a successor from remedying Winco's unlawful refusal to bargain. Bargaining obligations do not exclusively depend upon Board supervised elections and certifications. Under § 9(a) of the Act, "[a]n employer's voluntary recognition of a majority union remains 'a favored element of national labor policy.'" *NLRB v. Lyon & Ryan Ford, Inc.*, 647 F.2d 745, 750 (7th Cir.) (citation omitted), *cert. denied*, —— U.S. ——, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981).[7] Here, Winco voluntarily recognized the union and then unlawfully repudiated its recognition. Cooper Oil subsequently acquired Winco with actual knowledge of Winco's pending labor proceedings, retained the former Winco employees in the same positions, and operated the enterprise with little or no interruption and without substantial change. We have expressly noted that former Winco employees constitute a majority of Cooper Oil's employees in the relevant bargaining unit. These factors satisfy the requirements outlined in *Golden State Bottling Co.* with respect to outstanding bargaining orders. 414 U.S. at 184 n.6, 94 S.Ct. at 425 n.6; *cf. International Union of Electrical, Radio & Machine Workers v. NLRB, supra*, 604 F.2d at 695 (in proceeding against successor for

---

6. As noted in *International Ass'n of Machinists v. NLRB*, 193 U.S.App.D.C. 279, 595 F.2d 664, 670 n.29 (1978) (emphasis in original, citations omitted), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 36 (1979),

> Despite the intimation in *Golden State Bottling Co.* that *Burns* recognizes a successor's duty to bargain only when he hires a majority of his *predecessor's* employees, the relevant ratio—suggested by the language in *Burns* itself—is not the percentage of the predecessor's employees enrolled by the successor but the percentage of the *successor's* work force populated by those employees. This is true because the question to be re-

solved in light of § 9(a) [of the Act] is whether the incumbent union represents a majority of the successor's employees.

7. "The essence of voluntary recognition is the 'commitment of the employer to bargain upon some demonstrable showing of majority [status] .... Once that commitment [is] made, [the employer cannot] unilaterally withdraw its recognition and to do so [is] a violation of the Act.'" *NLRB v. Lyon & Ryan Ford, Inc.*, 647 F.2d 745, 751 (7th Cir.), *cert. denied*, 50 U.S. L.W. 3278 (Oct. 13, 1981), *citing Jerr-Dan Corp.*, 237 N.L.R.B. 302, 303 (1978), *enforced mem.*, 601 F.2d 575 (3d Cir. 1979).

refusal to bargain with incumbent union, held that "a predecessor's voluntary or 'contractual' recognition of a unit may be as binding on a successor as that arising from certification"); *NLRB v. Tahoe Nugget, Inc.*, 584 F.2d 293, 297 (9th Cir. 1978) (in proceeding against successor for refusal to bargain with incumbent union, held that voluntary recognition will support presumption of majority support), *cert. denied*, 444 U.S. 887, 100 S.Ct. 187, 62 L.Ed.2d 122 (1979); *Zim's Foodliner, Inc. v. NLRB*, 495 F.2d 1131, 1139–41 (7th Cir.) (proceeding against successor for refusal to bargain, bargaining relationship established by past history of negotiation rather than certification), *cert. denied*, 419 U.S. 838, 95 S.Ct. 66, 42 L.Ed.2d 65 (1974).

▪ Cooper Oil also argues that the bargaining order was inappropriate because Cooper Oil, upon taking over Winco, reorganized Winco's internal structure and integrated the former Winco employees into the Cooper Oil workforce, thus destroying the bargaining unit previously recognized by the Board. The three former Winco stations, together with the three former Twin City stations and one Cooper Oil station, now constitute the northern division of Cooper Oil. We do not think that this type of corporate reorganization is significant enough to defeat an obligation to bargain. "Although some internal organization alterations may affect successorship obligations, not all changes will be of determinative significance. The essential inquiry is whether operations, as they impinge on union members, remain essentially the same after the transfer of ownership." *International Union of Electrical, Radio & Machine Workers v. NLRB, supra*, 604 F.2d at 694 (proceeding against successor for refusal to

bargain with incumbent union) (footnote and citations omitted).

Here, the operation of the enterprise with respect to the former Winco employees remained essentially the same under Cooper Oil. The former Winco employees continue to work at the former Winco stations and are supervised by a former Winco supervisor; the former Winco stations are operated as APCO stations and evidently do more business than other stations in the northern division. The Board concluded that the three former Winco stations remained an appropriate bargaining unit. Under the present circumstances, the Board's decision is rational and meets the "community of interests" test. *See, e.g., Local 627, International Union of Operating Engineers v. NLRB*, 194 U.S.App.D.C. 37, 41–42, 595 F.2d 844, 848–49 (1979). The Winco bargaining unit previously recognized has remained substantially intact; although now part of a larger corporation, the bargaining unit has retained "some degree of separate identity" within this larger organization. *NLRB v. DIT–MCO, Inc.*, 428 F.2d 775, 780 (8th Cir. 1970); *see also NLRB v. Fabsteel Co., supra*, 587 F.2d at 694–95 (discussing what changes in a bargaining unit would defeat a successor's bargaining obligation).

In conclusion, the Board's bargaining order against Cooper Oil was appropriate. We recognize that although Cooper Oil has not been found guilty of committing any unfair labor practices itself,[8] it must remedy those committed by another employer. This, however, is precisely the consequence of the finding of successorship under *Golden State Bottling Co.*

▪ Accordingly, the supplemental order of the Board is enforced in full.[9]

---

**8.** The Board proceeded against Cooper Oil as the successor to Winco and sought to require Cooper Oil to bargain with the union in order to remedy Winco's refusal to bargain. The Board did not proceed *directly* against Cooper Oil for refusal to bargain with the union, although it would appear that Cooper Oil has an *independent* duty to bargain under the present circumstances. *E.g., Bellingham Frozen Foods, Inc. v. NLRB*, 626 F.2d 674, 678–80 (9th Cir. 1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct.

941, 67 L.Ed.2d 110 (1981); *Valmac Indus., Inc. v. NLRB*, 599 F.2d 246, 247–48 (8th Cir. 1979). Although the Board in its brief argues that Cooper Oil's independent duty to bargain also supports the bargaining order, our decision is not based upon this theory because it was not relied upon by the Board in its decision. *E.g., SEC v. Chenery Corp.*, 318 U.S. 80, 95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943).

**9.** The duty of the successor is to recognize the union and to bargain. The successor is not

bound by substantive provisions previously negotiated by the former employer which it has neither agreed to nor assumed. *See NLRB v.*

*Burns Int'l Security Servs., Inc. v. NLRB, supra,* 406 U.S. at 284 & n.8, 92 S.Ct. at 1580 & n.8.