819 F.2d 191
 125 L.R.R.M. (BNA) 2966, 106 Lab.Cas. P 12,392
 Richard L. SMEGAL, Marvin A. Rogers and Rodney W. Bomstad,
on behalf of themselves and all others similarly
situated, Appellants,
v.
GATEWAY FOODS OF MINNEAPOLIS, INC. and Over-the-Road, City
Transfer, Cold Storage, Grocery & Market Drivers, Helpers &
Inside Employees Union, Local No. 544, affiliated with the
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen & Helpers of America, National Super Markets,
Inc., Appellees.
and
GATEWAY FOODS OF MINNEAPOLIS, INC. and Over-the-Road, etc. Local 544,
v.
NATIONAL SUPER MARKETS, INC.
 No. 86-5414.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 11, 1987.
Decided May 21, 1987.
As Amended June 19, 1987.
Rehearing Denied June 19, 1987.
 
 James C. O'Neill, St. Paul, Minn., for appellants.
 Martin Costello, St. Paul, Minn., for Teamsters.
 David R. Hols, Minneapolis, Minn., for Gateway Foods.
 Before ARNOLD, Circuit Judge, WRIGHT,* Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 EUGENE A. WRIGHT, Senior Circuit Judge.
 
 
 1
 The sole issue in this appeal is whether Gateway Foods of Minneapolis, Inc. is a successor employer, obligated to adhere to the terms of the collective bargaining agreement between National Super Markets, Inc. and Over-the-Road, City Transfer, Cold Storage, Grocery & Market Drivers, Helpers & Inside Employees Union, Local No. 544. We hold that it is not a successor employer and do not reach the issue of its obligation to adhere to the contract.
 
 BACKGROUND
 
 2
 Appellants were drivers and warehousemen for National Super Markets, Inc. who worked at its Hopkins, Minnesota warehouse. These workers were represented by Local 544, affiliated with the International Brotherhood of Teamsters, and were covered by a contract that would expire in June 1982. The contract included a successors and assigns clause, requiring a successor to abide by the National contract. A national Teamster contract, which covered the employees also, included a clause that allowed for abrogation of the contract if the work was subcontracted.
 
 
 3
 In June 1981, National executed an agreement with Gateway Foods of Minneapolis, Inc., which purported to subcontract the warehouse/distribution aspect of the National business to Gateway. As part of the agreement National subleased the Hopkins warehouse and equipment to Gateway. Gateway agreed to hire the National employees, if they approved a contract bringing them in as new hires behind all Gateway employees, and at reduced wages and benefits. The Teamsters agreed to the proposal.
 
 
 4
 Immediately after the phase in of the new operation, in August of 1981, 113 of 127 former National employees were working for Gateway, but 37 drivers were no longer based at the Hopkins facility, and a number of junior warehouse workers had been transferred to the Minneapolis warehouse. By June of 1982 only 42 former Hopkins-based employees remained there. At all times the National employees were a minority of the Gateway staff.
 
 
 5
 The general nature of work and occupations of the National employees remained the same. However, Gateway reorganized its operation somewhat, consolidating certain operations in the Hopkins warehouse and certain functions in Minneapolis. The service provided by Gateway, into which the Hopkins warehouse was integrated, was that of a large-scale food wholesaler. Therefore, it differed from the retail grocery business, with a subsidiary storage and distribution operation, conducted by National.
 
 
 6
 Several former National employees filed a grievance against Gateway, alleging that, as a successor employer, Gateway was required to accord them their full contractual seniority rights, wages, and benefits. When Gateway refused to consider the grievance, and the Teamsters declined to pursue the matter, both were sued in federal court: Gateway for breach of contract under Sec. 301 of the Labor Management Relations Act, and the union for breach of the duty of fair representation.
 
 
 7
 The district court granted defendants' motion for summary judgment, but we reversed, 763 F.2d 354, concluding that we could not say as a matter of law that Gateway was not a successor employer. On remand the court held that it was not a successor, and this appeal followed.
 
 ANALYSIS
 
 8
 The appellants, collectively Smegal, argue that Gateway is a successor because a majority of former National employees were hired by Gateway and continued to do the same work, under the same supervisors, in the same location, for the same parties. The district court found that Gateway was not a successor because there was no substantial continuity between the National and Gateway operations. It found that the National employees were a minority of the new group, that their work and working conditions had changed, their supervisors were different, and the services offered had changed. These findings are not clearly erroneous. See Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).
 
 
 9
 The district court analyzed in depth the controlling authorities regarding the question of successorship. As it correctly noted, the court must make a case by case analysis of the question, taking into account the facts and the context of each case. Howard Johnson Co. v. Detroit Local Joint Executive Bd., Hotel & Restaurant Employees & Bartenders Int'l Union, 417 U.S. 249, 256, 94 S.Ct. 2236, 2240, 41 L.Ed.2d 46 (1974). It must balance the rights of employers and facilitate the transfer of capital, while protecting the employees. Id. at 253-55, 94 S.Ct. at 2238-39; N.L.R.B. v. Winco Petroleum Co., 668 F.2d 973, 977-78 (8th Cir.1982).
 
 
 10
 The major test for a successor employer is whether there is substantial continuity between the new operation and the old, particularly with regard to the employees. See Valmac Industries, Inc. v. N.L.R.B., 599 F.2d 246, 248 (8th Cir.1979); Russom v. Sears, Roebuck & Co., 415 F.Supp. 792, 797 (E.D.Mo.1976), aff'd, 558 F.2d 439 (8th Cir.), cert. denied, 434 U.S. 955, 98 S.Ct. 481, 54 L.Ed.2d 313 (1977). There has been some confusion, however, about the definition of "substantial continuity."
 
 
 11
 In an unfair labor practice suit the Supreme Court held that continuity meant that a majority of the new employer's work force came from the predecessor. N.L.R.B. v. Burns Int'l Security Serv., 406 U.S. 272, 278-79, 92 S.Ct. 1571, 1577, 32 L.Ed.2d 61 (1972). In a case brought under Sec. 301 of the Labor Management Relations Act the Court described substantial continuity as the successor employer hiring the majority of the predecessor's employees. Howard Johnson, 417 U.S. at 263, 94 S.Ct. at 2243. However, as the district court noted, the Burns test has become the standard used, i.e., substantial continuity requires that the predecessor's employees constitute a majority of the successor's workforce. See C. Morris, The Developing Labor Law 715 (B.N.A. 2d ed., 1983); id. at 185 (Supp.1985).
 
 
 12
 We have ruled that in a case involving a claim of failure to bargain, a majority of the successor's employees must have been employed by the preceding employer. See Valmac Industries, 599 F.2d at 248. We have not ruled directly on which test is to be used when a Sec. 301 charge is involved.
 
 
 13
 In one case the circuit did determine that an employer was a successor when a majority of the predecessor's employees had been hired. See Winco, 668 F.2d at 978. In that case, however, the Labor Board had ruled that the segment of employees hired from the previous employer continued to constitute an appropriate, separate, unchanged bargaining unit. It then found that their work, working conditions, supervisors, and services performed remained unchanged. Id. at 976. The case does not support the alternative definition of "majority of employees" proposed by Smegal.
 
 
 14
 Even if the appellants' definition of the majority test were accepted by the panel, the remaining factors used to evaluate substantial continuity support the district court's decision. The seven factors include: 1) substantial continuity of the same business operations, 2) use of the same plant, 3) continuity of the work force, 4) similarity of jobs and working conditions, 5) similarity of supervisory personnel, 6) similarity in machinery, equipment, and production methods, and 7) similarity of products or services. Russom, 415 F.Supp. at 797; C. Morris, The Developing Labor Law 726 (B.N.A. 2d ed., 1983).
 
 
 15
 As a major food wholesaler, serving approximately 500 outlets from several warehouses, the new Gateway operation bore only a superficial resemblance to National's smaller, single center distribution center. Because Gateway consolidated the warehouses, much of the work previously done in the National plant was transferred. Similarly, while the occupations of National employees remained the same, the transition to large scale wholesaling, and the new organizational structure of Gateway necessarily changed the nature of their jobs and working conditions. The mix of the employees included changes of supervisory personnel as well. On the whole, the weight of these factors suggests that Gateway is not a successor employer.
 
 CONCLUSION
 
 16
 We hold that Gateway is not a successor employer and affirm the district court decision. The evidence demonstrated that there is not substantial continuity between the Gateway and National operations.
 
 
 17
 ARNOLD, Circuit Judge, concurring.
 
 
 18
 I am not fully persuaded that the Court has applied the proper standards in determining the issue of successorship. Here, 113 of the 127 employees of the former employer were hired by the new employer. I am inclined to think that this fact points significantly towards a finding of successorship. The question presented here arises not in the context of a refusal to bargain, where majority status among the employees of the present employer is dispositive, but rather in the context of a Sec. 301 action for enforcement of a collective-bargaining agreement. In such a situation, the Supreme Court has implied, if it has not held, that the relevant criterion is whether the "acquired" employees amount to a majority of the employees of the former employer. Howard Johnson Co. v. Detroit Local Joint Executive Board, 417 U.S. 249, 263-64, 94 S.Ct. 2236, 2244, 41 L.Ed.2d 46 (1974). No other court of appeals has rejected this criterion. Instead, the Fifth Circuit has held that it, rather than the standard the Court adopts here, whether the "acquired" employees constitute a majority of the successor's workforce, is the chief consideration in the Sec. 301 context. Boeing Co. v. International Association of Machinists & Aerospace Workers, 504 F.2d 307, 318-21 (5th Cir.1974), cert. denied, 421 U.S. 913, 95 S.Ct. 1570, 43 L.Ed.2d 779 (1976). See also NLRB v. Band-Age, Inc., 534 F.2d 1, 4 n. 6 (1st Cir.), cert. denied, 429 U.S. 921, 97 S.Ct. 318, 50 L.Ed.2d 288 (1976).
 
 
 19
 I think it unnecessary to create this conflict with the law of another circuit. Here, the ultimate issue is whether the Union violated its duty of fair representation. Only if such a violation is found can an action be entertained for breach of contract against the employers, past and present. Whatever the merits of the question of successorship, I am persuaded that it is, as a matter of law, close enough to justify the Union's decision not to pursue a grievance based on a successorship theory. Therefore, I agree that the complaint was properly dismissed, and I concur in the result reached by this Court.
 
 
 
 *
 The Honorable Eugene A. Wright, United States Senior Circuit Judge for the Ninth Circuit, sitting by designation