NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

COTT CORPORATION, Respondent.

No. 77–1502.

United States Court of Appeals,
First Circuit.

Argued May 3, 1978.

Decided July 13, 1978.

John D. Burgoyne, Asst. Gen. Counsel, Washington, D. C., with whom John S. Irv-

ing, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, and Elliott Moore, Deputy Ass'n Gen. Counsel, Washington, D. C., were on brief, for petitioner.

Arthur G. Telegen, Boston, Mass., with whom David B. Ellis and Foley, Hoag & Eliot of Boston, Mass., were on brief, for respondent. ·

Before COFFIN, Chief Judge, and CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

On May 4, 1973, the National Labor Relations Board found Ponn Distributing Co. guilty of unfair labor practices and ordered that Ponn remedy its violations by, *inter alia*, recognizing the Retail, Wholesale and Department Store Union, AFL–CIO, (the "Union") as bargaining agent for Ponn's drivers and salesmen. On November 15, 1973, this court entered a decree enforcing the order against Ponn. Four days earlier, however, respondent Cott Corp. had foreclosed on Ponn's assets pursuant to a security arrangement and had taken over Ponn's business. On April 11, 1975, the Labor Board issued a notice of show cause requiring Cott to demonstrate why it should not be required to comply with the order which the Board had issued against Ponn in 1973. After the submission of various stipulations and documents, the Labor Board on September 23, 1977, ordered Cott to recognize the Union as bargaining agent for its employees and issued a cease and desist order enjoining Cott from violating the National Labor Relations Act. The Labor Board petitions here for enforcement of its order.

From 1971 to 1973, Ponn served as distributor in the Worcester-Leominster-Fitchburg area for Cott beverages. On November 19, 1971, the Union asked Ponn for recognition and then petitioned for an election. At that time 10 of the 16 Ponn employees had signed valid authorization cards for the Union. The Union lost the election held on December 30, and then filed unfair labor practice charges against Ponn. The Board found that Ponn was guilty of several unfair practices and, in addition to other relief, voided the election, which it found to have been unfairly affected by Ponn's violations.[1] The Board also found that Ponn's unfair labor practices had so poisoned the atmosphere as to make a fair rerun election unlikely and ordered Ponn to bargain with the Union on the basis of the previous authorization card majority.

Upon taking over Ponn as a result of Ponn's default on its security interest, Cott rehired all eight of the Ponn employees in the bargaining unit recognized by the Labor Board.[2] Without conceding a legal obligation to do so, Cott bargained with the Union until August 30, 1974, when a Cott employee filed a decertification petition. When the petition was filed, five former Ponn employees still remained in the unit. However, by the time the Board issued its show cause order, only one Ponn employee remained among the seven Cott employees, and he separated from Cott in November 1976.

Because Cott, again without conceding its obligation to do so, met Ponn's back pay obligations and offered reinstatement to the two employees to whom Ponn had been ordered to tender offers of employment, the only part of the Board's original order that Cott had not satisfied at the time of the supplemental proceedings against Cott was Ponn's duty to bargain with the Union. In holding Cott responsible for that duty also, the Board apparently reasons that since an order to set aside an election and require a guilty employer to bargain with a union on the basis of a card majority is an approved remedy in light of *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), a successor employer invariably

---

**1.** The violations included the discriminatory discharge of two employees and coercion, threats and unlawful promises with respect to other employees.

**2.** The record does not reveal whether any of these eight were employed by Ponn at the time of the certification election or had been among the ten employees who signed authorization cards.

assumes that obligation under the interpretation of § 10(c) of the National Labor Relations Act, 29 U.S.C. § 160, employed in *Perma Vinyl Corp.*,[3] which the Supreme Court approved in *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973). In maintaining this position, the Board further relies upon the rule, developed in unfair labor practice cases against successor employers, that a successor in certain circumstances is bound to bargain with the representative of the predecessor company's employees, *see NLRB v. Burns Int'l Security Services Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), and upon the presumption it follows that new employees support the union in the same ratio as those replaced, *James W. Whitfield*, 220 N.L.R.B. 507, 509 (1975). Accordingly although by the time of its cease and desist order none of the former Ponn people were working for Cott, the Board ordered Cott to comply with its 1973 order directing Ponn to bargain with the Union.

A threshold problem with the Board's analysis is that the Board is not challenging Cott's refusal to recognize the Union as the representative of its employees in the context of an unfair labor practice proceeding against Cott. Thus the line of unfair practice decisions regarding the scope of the obligation of a successor employer to acknowledge the continued authority of the representative of its predecessor's employees to represent the bargaining unit, *see Burns Int'l Security Services, supra; NLRB v. Band-Age, Inc.*, 534 F.2d 1 (1st Cir.), *cert. denied*, 429 U.S. 921, 97 S.Ct. 318, 50 L.Ed.2d 288 (1976), are not strictly apposite. The posture of the present case does not deal with and should not be considered controlled by or relevant to the successorship obligations of new employers to bargain with a union certified by the Board as the bargaining agent of its predecessor's employees or a union representing its predecessor's employees under a collective bargaining agreement. Rather, this case tests

the Board's power under § 10(c) to order a party which has not been charged with a violation of the labor law to provide relief to persons who have been injured by the unfair labor practices of others. In particular, it involves the limits of the Board's discretion to extend the kind of remedy authorized by *Gissel Packing Co., supra*, namely, the issuance of a bargaining order, instead of the institution of a rerun election, to a subsequent employer who was not responsible for any unfair labor practice being remedied.

In *Gissel*, the Court approved the use of a bargaining order against the guilty employer as a permissible alternative to a rerun election in situations where the employer's unfair labor practices had made a fair election unlikely. The Court indicated, however, that an election remains the preferred way of determining a bargaining unit's representative, *id.*, 395 U.S. at 602, 89 S.Ct. 1918, and made clear that the choice of a bargaining order must depend on the existence of circumstances that make an election infeasible. *Id.* at 614–15, 89 S.Ct. 1918, *see Struthers-Dunn, Inc. v. NLRB*, 574 F.2d 796 (3d Cir. 1978). In the instant case against Cott, a subsequent employer, the Board is seeking to apply its earlier determination in the unfair practice proceeding against Ponn that a fair election could not be held. It apparently considers that once it has determined a bargaining order is the appropriate remedy, it need not take into account even such fundamental changes in circumstances showing that a fair election has become feasible as the substitution of an entirely different employer and the rotation of the workforce.

▮ Both the policies underlying *Gissel* and later Supreme Court precedent provide little support for this position. As already indicated, rerun elections are said ordinarily to be the preferred means for determining the desires of members of the bargaining unit as to who shall represent them. Be-

---

**3.** 164 N.L.R.B. 968 (1967), *enforced sub nom. United States Pipe & Foundry Co. v. NLRB*, 398 F.2d 544 (5th Cir. 1968).

cause the imposition of a bargaining agent on a unit on the basis of an earlier card majority presents some potential for thwarting the employees' wishes, *cf. Gissel, supra,* 395 U.S. at 602–03, 89 S.Ct. 1918, the device should be relied on only when no better way of ascertaining their unbiased choice is available. Here, both the employer who committed the unfair practices believed to have poisoned the electoral climate and the employees who were subjected to these influences have left the scene.[4] When the circumstances that originally indicated an election would be biased disappear, an election again becomes the best way of discovering the employees' intent. Under these circumstances, a bargaining order not only is unnecessary, but may even frustrate the policy of allowing employees to pick the representative of their choice that *Gissel* was intended to promote.[5]

■ In recognition of the fact that a change in circumstances might make enforcement of a once valid remedial order inappropriate, the Supreme Court has expressly limited the scope of relief that may be obtained from the successor of an employer that has committed unfair labor practices.[6] While *Golden State Bottling Co., supra,* recognized the general principle that a successor employer could be made to satisfy the remedial obligations of its predecessor, the Court was careful to point out that the scope of the successor's liability would be limited by the nature of the relief sought:

"A purchasing company cannot be obliged to carry out under § 10(c) every outstanding and unsatisfied order of the Board. For example, because the purchaser is not obligated by the Act to hire any of the predecessor's employees, see *NLRB v. Burns International Security Services, Inc., supra,* [406 U.S.] at 280 n. 5, [92 S.Ct. 1571], the purchaser, if it does not hire any or a majority of those employees, will not be bound by an outstanding order to bargain issued by the Board against the predecessor or by any order tied to the continuance of the bargaining agent in the unit involved. *Id.,* at 280–281, 92 S.Ct. 1571."

*Golden State Bottling Co., supra,* 414 U.S. at 184 n.6, 94 S.Ct. at 425. The Court's example comes close to describing this case as it stood when the Board initiated § 10(c) proceedings against Cott. Here, although Cott had originally hired a unit consisting of a majority of Ponn's employees, only one Ponn employee remained at the time of the Board's show cause order. It is the later time that is significant, because, as noted above, the Board's final order was grounded not on any possible obligation Cott might have had under *Burns* to recognize the previous representative of the employees it hired, but rather on Cott's obligation to remedy the unfair labor practices of its predecessor.[7] Because the basis for the bargaining order remedy had disappeared

4. Because the issue is not continuity of support for the bargaining representative, but rather the irremediable effects of previous unfair labor practices by an employer, the presumption that new employees support the union in the same ratio as those replaced is inapposite.

5. It is a rough indicator of the conflict between this order and the policies underlying *Gissel* that on two occasions the Board declined to impose a similar obligation on successor employers, and in the one instance where it sought to impose such a duty the Ninth Circuit refused enforcement. *See Webb Tractor & Equipment Co.,* 181 N.L.R.B. 230 (1970), *enforcement denied,* 80 L.R.R.M. 2738 (9th Cir. 1972) (per curiam); *Thomas Engine Corp.,* 179 N.L.R.B. 1029 (1970) (ordering new election rather than determining whether previous election had been infected by predecessor employer's unfair labor practices), *enforced,* 442 F.2d

1180 (9th Cir. 1971); *Emerson Electric Co.,* 176 N.L.R.B. 744 (1969) (finding of hearing examiner that bargaining order would be inappropriate against successor employer not challenged by Board staff).

6. Cott also challenges the finding of the Labor Board that it was a successor employer. It argues that the fact that it took over Ponn's business because of Ponn's default on a security interest prevented it from protecting itself from Ponn's liability through arms length bargaining over the purchase price, and that imposition of liability for Ponn's misdeeds therefore would be inequitable. We do not reach that question here.

7. It is true, as the Board points out, that a party subject to a Board order ordinarily may not raise as a ground for denying enforcement the

by the time the Board instituted proceedings against Cott, and because the Board has not sought to show any other ground for requiring Cott to recognize the Union, the case falls within the exception noted in *Golden State.*

*Enforcement denied.*

fact that in the time between the institution of Board proceedings and its final determination of relief circumstances have changed so as to alter the original basis for relief. *See, e.g., NLRB v. Katz*, 369 U.S. 736, 748 n.16, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962); *Teleprompter Corp. v. NLRB*, 570 F.2d 4, 11–12 (1st Cir. 1977). Here, however, Cott was not made subject to a Board proceeding until April 1975. The Board may judge the appropriateness of its actions from the perspective of that point in time, but we can discern no reason of policy (such as deterring employers from seeking delay through litigation) to go back to an earlier date. The question before the Board after it commenced the supplemental proceeding was whether circumstances still remained such that a fair rerun election could not be held.