**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ST. REGIS PAPER COMPANY, Respondent.**

**No. 81–1498.**

United States Court of Appeals, First Circuit.

Argued Jan. 6, 1982.

Decided March 23, 1982.

Diana Orantes Ceresi, Atty., Washington, D. C., with whom William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., were on brief, for petitioner.

S. Mason Pratt, Jr., Portland, Maine, with whom Donald W. Perkins, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Maine, and Robert E. Jackson, West Nyack, N. Y., were on brief, for respondent.

Before COFFIN, Chief Judge, and CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

The National Labor Relations Board (the Board) petitions for enforcement, and St. Regis Paper Company (the Company) cross-petitions for review, of the Board's decision and order finding that the Company had violated sections 8(a)(1), (3), and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (3), (5), and ordering the Company to cease and desist from repeating its violations of the Act, to take certain affirmative action, and to post an appropriate notice. The Board found that a maintenance garage at First Machias Lake, Maine (First Lake) constituted an accretion to an existing bargaining unit at the Company's Bucksport, Maine garage. It therefore found that the Company violated sections 8(a)(5) and (1) by refusing to bargain over conditions at First Lake and refusing to apply the terms of the Bucksport contract to First Lake. It also found that two employees were discriminatorily transferred from First Lake to Bucksport because of their union membership, in violation of sections 8(a)(3) and (1), and that another employee was coerced into resigning from the union to avoid transfer, in violation of section 8(a)(1). The Board ordered the Company, upon request, to bargain with the union with respect to First Lake, to apply the Bucksport contract retroactively to First Lake, and to make the employees whole for any losses they may have suffered by the Company's failure to apply the contract to First Lake in the past. It also ordered the Company, upon request, to return the transferred employees to First Lake.

## I.

St. Regis is engaged in the manufacture and sale of pulp, paper, packaging, and other products. Its "Woodlands" division, headquartered at Bucksport, includes Maine and several other states. Logging operations in Maine supply wood to the Company's mill at Bucksport. In 1958, following a Board-conducted election, the union [1] was certified as the exclusive bargaining representative of a unit consisting of "all automobile mechanics located at the Woodlands garage, Bucksport, Maine." At that time, all mechanics in the Woodlands division were based at the Bucksport garage. They serviced the Company's trucks and log haulers, travelling as needed to logging sites in various parts of Maine. The collective bargaining agreement has always provided in its recognition clause that it covers "the employees in the Woodlands garage located at Bucksport, Maine."

In 1967, the Company opened a garage at Colson Field, Maine. Two mechanics, Alton Norton and Ervin Googins, were assigned to work at Colson Field. Norton had originally worked at Bucksport; Googins may have as well. They were both union members. Other mechanics from Bucksport were also assigned to work at Colson Field from time to time. In 1974, the Company opened its First Lake garage and closed down the one at Colson Field. It transferred Norton and Googins to First Lake. By June 1975, Alfred Wood was also working as a mechanic at First Lake. He, too, was a union member, who may have worked at Bucksport earlier. All these men were on dues checkoff. Colson Field and First Lake are each approximately 75 miles from Bucksport; they are approximately 11 miles from each other. At various times, the Company also operated other garages distant from Bucksport and closer to its logging sites.

The union unsuccessfully attempted to expand the Bucksport contract's recognition clause to include First Lake during the 1975 negotiations. On June 13, 1975, however,

---

1. District 99, Lodge No. 1821, International Association of Machinist and Aerospace Workers, AFL–CIO.

the Company did advise the union by letter that it "recognize[d] that the following three timberlands employees are represented by Lodge No. 1821: Ervin Googins, Alton Norton, Alfred Wood." At that time, these were the only mechanics at First Lake.

Wayne Haslam, another union mechanic who had worked at Bucksport, was assigned to First Lake later that June. Subsequently, non-union mechanics were hired to work at First Lake. By November 1976, First Lake was staffed by four union and four non-union mechanics. The union again tried to amend the recognition clause to include First Lake during the 1976 Bucksport negotiations. Again, it was unsuccessful, although the Company stated that the June 1975 letter was still in effect. As of the time of these negotiations, however, there were at least two non-union mechanics at First Lake.

The new 1976 Bucksport wage package was applied to First Lake; a paid lunch break included in the Bucksport agreement, however, was not. Norton and Wood filed a grievance over the matter, but the Company refused to arbitrate on the ground that the Bucksport contract did not apply to First Lake. The Board found that this refusal to apply the terms of the Bucksport contract to First Lake, and subsequent refusals to bargain over conditions at First Lake, violated sections 8(a)(5) and (1) because First Lake had become part of the Bucksport unit by operation of the doctrine of "accretion."

In September 1976, two vacancies developed at the Bucksport garage. The Company chose the least senior union mechanics[2] at First Lake for transfer to Bucksport. It did not consider transferring less senior non-union mechanics. In February 1977, another Bucksport vacancy appeared. Norton was informed that he would be transferred because he was the only union mechanic left at First Lake. He stated that he did not want to transfer and, indeed, did not want to continue as a mechanic at all for health reasons. He resigned from the union and was not transferred out of First Lake until he was assigned to a truck driver position in June 1977. The Board found that the transfers of Googins and Haslam violated sections 8(a)(3) and (1), and that Norton was coerced into resigning his union membership in violation of section 8(a)(1).

More than five years have passed since the facts underlying the challenged decision took place and more than three years have passed since the Board first rendered the decision under review.[3] Since that time, we have been informed by affidavits of the Company, which are not contested by the Board, that many changes have occurred. The Bucksport garage was closed in April 1980. First Lake was closed in February 1981. Some of its personnel and materials were transferred to Colson Field, which was reopened. There are currently three hourly mechanics assigned to Colson Field. None of them has ever been a member of the union or on dues checkoff while with the Company.

## II.

The Board agreed with the ALJ that First Lake constituted an accretion to the Bucksport bargaining unit and that the Company therefore had a statutory duty to bargain with the union as representative of all mechanics at First Lake as well as at Bucksport. The accretion ruling is now disputed by the Company.

A group of employees is properly accreted to an existing bargaining unit

2. These were Wood and Googins. Haslam, however, volunteered to transfer with Googins because they travelled together and he feared Wood would resign rather than transfer. Haslam was therefore transferred in Wood's stead.

3. The hearing before the ALJ was held in mid-1977, the ALJ's report being issued a year later, July 10, 1978. The Board's initial decision, which upheld the ALJ's recommendations with minor changes, was issued December 11, 1978, 239 NLRB 688 (1978). It then reconsidered the section 8(a)(3) charge, and reaffirmed its original decision, on April 2, 1981, 255 NLRB 72 (1981).

when they have such a close community of interests with the existing unit that they have no true identity distinct from it. *E.g., Universal Security Instruments, Inc. v. NLRB,* 649 F.2d 247, 253 (4th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981). A number of factors should be considered, such as similarity of working conditions, centralized management, collective bargaining history, employee interchange, and geographic distance. *See NLRB v. R. L. Sweet Lumber Co.,* 515 F.2d 785, 794 (10th Cir.), *cert. denied,* 423 U.S. 986, 96 S.Ct. 393, 46 L.Ed.2d 302 (1975). The ALJ[4] concluded, on all the facts, that accretion was proper here. He supportably found that the work performed at First Lake was identical to that performed at Bucksport; that First Lake and Bucksport mechanics often worked together at various locations in the woods; that they were all under the supervision of the same person, whose office was at Bucksport; and that hiring and firing at First Lake were controlled from Bucksport. While other reasons mentioned by the ALJ seem more questionable, and the question seems close, we are satisfied that in light of the factors just stated, there was no abuse of discretion in the accretion determination.[5] *See NLRB v. R. L. Sweet Lumber Co.,* 515 F.2d at 794.

### III.

A more troubling contention of the Company is that the Board's order directing it to bargain with the union as representative of mechanics at First Lake is now so outdated as to be moot and incapable of enforcement. The Company has filed affidavits indicating that Bucksport and First Lake were closed in 1980 and 1981 respectively, and that the only garage still operating anywhere is at Colson Field, staffed by three hourly non-union mechanics, one salaried mechanic, and a working foreman. While courts of appeals, when reviewing Board proceedings, do not normally take into account changes in circumstances since the date of the Board proceedings under review, *see, e.g., NLRB v. Cott Corp.,* 578 F.2d 892 (1st Cir. 1978), the changes here are so fundamental that they are not easily ignored. We realize, as the Board reminds us, that a bargaining obligation is not normally ended simply by relocation of the employer's facilities. *See NLRB v. Die Supply Corp.,* 393 F.2d 462, 467 (1st Cir. 1968). If we were to command enforcement of the order directing bargaining at First Lake, the Board says it will construe it so as to direct the Company to

---

**4.** The Board adopted the ALJ's conclusion on the First Lake accretion issue without analysis of its own. It also modified the ALJ's findings to include non-supervisory mechanics on a newly created mechanical harvesting crew within the bargaining unit. The Company has not shown that it presented any arguments to the Board against this modification, either initially or via a motion for reconsideration. It is therefore foreclosed from challenging this finding at this time. *See* NLRA § 10(e), 29 U.S.C. § 160(e); *NLRB v. Sambo's Restaurant, Inc.,* 641 F.2d 794, 795–96 (9th Cir. 1981). In light of our remand for reconsideration of the bargaining order with respect to Colson Field, *see infra,* however, we think it appropriate for the Board to reconsider the order with respect to the mechanical harvesting crew as well, so that it may properly be assessed in light of present realities.

**5.** The Company argues with some force that the First Lake mechanics were included in a 1975 election unit comprised of employees working at a number of different jobs throughout the Maine Woodlands area. The election, held in October 1975, was lost by the union.

The Company argues that to accrete the First Lake mechanics to Bucksport would negate their freedom of choice, an important factor recognized by the Board in accretion situations, *see, e.g., Melbet Jewelry Co.,* 180 NLRB ·107 (1969). We are not, however, persuaded by this argument, for two reasons. First, there is no evidence that the First Lake mechanics were actually included in the Woodlands unit. Indeed, since at the time of the election all of the First Lake mechanics were transferees from Bucksport still on dues checkoff dating from their union membership there, it is not unreasonable to doubt whether anyone intended that they take part in the election. Second, the *Melbet Jewelry* principle is applicable to situations where the accreted unit could by itself constitute an election unit, rather than merely be part of another unit. There is thus no reason to suppose the freedom of choice of the First Lake mechanics would be better protected if they were part of the Woodlands unit than part of the Bucksport unit. In either case, they would be but a small part of a much larger group.

bargain with the union on behalf of the three hourly mechanics, not now members of the union, *at Colson Field.* But this would seem to require the Company to bargain in a unit at which there is little or no basis for assuming the·union today enjoys the support of any of the employees. *Cf. NLRB v. Massachusetts Machine and Stamping, Inc.,* 578 F.2d 15, 18–19 (1st Cir. 1978); *International Association of Machinists and Aerospace Workers v. NLRB,* 498 F.2d 680, 683 (D.C.Cir.1974); *NLRB v. Middleboro Fire Apparatus, Inc.,* 590 F.2d 4, 8 (1st Cir. 1978). In such unusual circumstances, we think it proper to remand so that the Board may reconsider its order in light of present realities. Such an approach is consistent with that we have used in the past to avoid "immediately locking the parties into a lengthy [bargaining] relationship on the basis of ancient events." *NLRB v. H. P. Hood, Inc.,* 496 F.2d 515, 520 (1st Cir. 1974). On remand, the Board should consider whether circumstances justify the application of the bargaining order, now addressed to the defunct First Lake, to any location other than First Lake, and indeed, whether any purpose remains to be served by enforcing such an order at this time. If so, the Board should reword its order so as to make its scope and effect clear, identifying the location or locations to which it now applies. While lesser changes in orders are customarily made by the Board after a court of appeals has "enforced" an order, we are reluctant to issue the process of this court to enforce an order such as this whose current applicability and scope are so entirely in doubt, and whose obsolescence is a real possibility.

### IV.

Turning to the section 8(a)(3) and (1) findings, related to the transfer of Googins and Haslam, and the resignation from the union of Norton, we believe the Board was justified in its conclusions.[6] The Company admitted that it chose the mechanics to transfer on the basis of their union membership. The Board was entitled to infer a discriminatory motive from this admission, and to discredit such reasons as the Company offered for its actions. The Board therefore committed no error in finding that the transfer of Googins and Haslam violated the Act. The evidence also supports the Board's conclusion that Norton was coerced into resigning in order to avoid transfer back to Bucksport. We therefore uphold this conclusion as well.

The Board's order will be enforced, except insofar as it orders, or may be interpreted to order, the Company to recognize or bargain with the union as representative of mechanics at First Lake or elsewhere, or to apply the terms and conditions of the collective bargaining agreement to such locations. With respect to these parts of the order, the case is remanded to the Board for further proceedings consistent with this opinion.

*So ordered.*

---

**6.** We are informed that Googins is now deceased, so that part of the order requiring the Company to offer him reinstatement at First Lake is of course moot.