CENTRAL SOYA COMPANY,
INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

American Federation of Grain
Millers, Intervenor.

No. 86–2665.

United States Court of Appeals,
Tenth Circuit.

Dec. 19, 1988.

Publication Ordered Feb. 15, 1989.

Philip V. Carter, Dennis R. Homerin, and Douglas A. Darch of Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for petitioner.

Barbara A. Atkin and Allen R. Ferguson, Jr., N.L.R.B., Washington, D.C., for respondent.

Gordon Gregory, Detroit, Mich., Laurence Gold and David Silberman, Washington, D.C., for intervenor.

Before LOGAN, LEAVY,* and BRORBY, Circuit Judges.

* The Honorable Edward Leavy, Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

PER CURIAM.

The petitioner, Central Soya Company, Inc., appeals from an order of the National Labor Relations Board which affirmed the judgment of an administrative law judge that Central Soya had committed certain unfair labor practices under the National Labor Relations Act. In particular, the Board ruled that Central Soya had committed an unfair labor practice by withdrawing recognition of an existing bargaining unit represented by the American Federation of Grain Millers (the Union), when employees represented by the unit were consolidated with certain nonunionized employees at a newly-acquired facility. In rejecting Central Soya's claim that the Union had lost its majority status, the Board found that the new employees were an accretion to the existing bargaining unit. It also concluded that Central Soya violated the Act by failing to bargain with the unit over the effects of the consolidation of the two employee groups. We conclude that the Board's decision that the petitioner committed unfair labor practices is supported by substantial evidence, and we affirm.

Central Soya is a national firm engaged in the production of animal feeds and other processed grain products. Since 1968, Central Soya had operated a feed processing mill located on First Street in Abilene, Kansas. The fifteen employees working at the mill and two located at a related grain elevator have historically been represented by the Union. The Union had negotiated a series of employment agreements, the most recent covering the period of Central Soya's alleged violations of the Act.

On July 18, 1980, Central Soya purchased the O.A. Cooper Company. Cooper had operated a grain processing facility located on Washington Street in Abilene, Kansas. The Washington Street facility was a significantly more modern, better-equipped facility than Central Soya's facility on First Street. At the time of the acquisition, it was staffed by seven nonunion employees. Before November 1, 1980, six more employees were hired to staff the Washington Street facility.

After its acquisition of Cooper, Central Soya began merging the operations of the two facilities. While these merger operations were pending, Mr. Howard Roe, a Union representative, contacted the personnel manager at Central Soya to request that the company meet with its First Street employees to discuss rumors of an impending close of the older First Street mill and the effect of the closing on these employees. The company indicated that a meeting would be premature, as it had not yet made a final decision on the matter. On October 1, 1980, however, Central Soya decided that it would close the antiquated First Street mill. It met with employees on October 9, 1980, and, without informing the Union, announced its decision that it would be transferring all of the First Street employees to Washington Street, that all would have jobs without a reduction in pay or benefits, and that they would be given the opportunity to adequately train for their new jobs.

The following day, the company received a letter from Mr. Roe requesting that it meet with the Union to discuss the effects of the transfer of unit employees and outlining the Union's position that the company would be bound by its collective bargaining agreement after the transfer. The company scheduled this meeting for October 22, 1980. One day before this meeting was to be held, Central Soya met with the First Street employees and announced, for the first time, that the Washington Street facility would be operated as a nonunion facility and that the company would not honor its collective bargaining agreement after the relocation. The next day, in their scheduled meeting with Mr. Roe, the company reaffirmed its position not to recognize the Union once the transfer to Washington Street was complete.

As a result of these events, the Union filed a complaint with the Board, alleging that Central Soya had breached §§ 8(a)(1) and 8(a)(5) of the National Labor Relations Act by unlawfully withdrawing recognition of the Union and failing to bargain with the Union over the effects of the transfer of union employees to the Washington Street mill. The case went to hearing before an

administrative law judge, who concluded that Central Soya had committed the alleged violations. In particular, the judge found that Central Soya's merger of the First Street mill into the Washington Street mill was a relocation of the older facility, and that Central Soya was still bound by its collective bargaining agreement with the Union. He also found that the Union had not lost its majority status once unit employees were merged with the former Cooper employees, because the Cooper employees were presumed to support the Union in the same proportion as the employees covered by the collective bargaining agreement. Finally, he concluded that the record did not support Central Soya's argument that it gave the Union the opportunity to bargain, but the Union did not respond.

On appeal, the Board affirmed, although on a slightly different basis. The Board held that Central Soya's transfer of the union employees was both a relocation and a consolidation of its former operation, upholding the judge's finding that there was no significant change in operations at the new mill following the transfer of the union employees. Furthermore, the Board affirmed the administrative law judge's finding that the Union had maintained its majority status, concluding that the former Cooper employees were an accretion to the bargaining unit. Lastly, the Board ruled that Central Soya's unilateral announcement regarding the effects of the move to Washington Street was a breach of its obligation to bargain with the Union.

In reviewing an order of the Board, we look at the record as a whole. *NLRB v. R.L. Sweet Lumber Co.*, 515 F.2d 785, 793 (10th Cir.), *cert. denied*, 423 U.S. 986, 96 S.Ct. 393, 46 L.Ed.2d 302 (1975). If a review of the entire record indicates that the Board's decision is supported by substantial evidence, we will affirm, even though we might have made a different choice were the matter before us *de novo*. *Id.* Likewise, if the Board's application of a rational rule is supported by substantial evidence, we will enforce its order. *Fall River Dyeing & Finishing Corp. v. NLRB,*

482 U.S. 27, 107 S.Ct. 2225, 2235, 96 L.Ed. 2d 22 (1987).

In this case, there is substantial evidence to support each of the Board's conclusions. There is little question that Central Soya's closing of the First Street Mill and transfer of its employees to Washington Street was a consolidation and relocation of its Abilene animal feed operations. Clearly, this consolidation represented a modernization of Central Soya's business in this area; however, it is equally clear that the transfer had a relatively minor effect on the actual conduct of Central Soya's business. Central Soya's Abilene operations still centered on the production of similar lines of animal feeds, its employees were essentially doing the same jobs under very similar working conditions under the same supervisors, and the production process was little changed, although production capacity had been improved. *See id.* 107 S.Ct. at 2236.

We do not view as dispositive Central Soya's assertion that the consolidation of Cooper's product lines with those of Central Soya and the adjustment of several employee classifications and pay rates indicate a new operation by the company. In the similar context of successorship, the question is whether " 'those employees who have been retained will understandably view their job situations as essentially unaltered.' " *Id.* (citation omitted). We find this consideration applicable here, and conclude there is substantial evidence that the employee's situation did not significantly change with the move to the newer mill. Thus, Central Soya's obligation to continue to recognize and bargain with the Union was not obviated by the consolidation of its operations at the Washington Street facility. *See NLRB v. St. Regis Paper Co.*, 674 F.2d 104, 108 (1st Cir.1982); *Lammert Indus. v. NLRB*, 578 F.2d 1223, 1225 (7th Cir.1978).

Given that Central Soya was obligated to continue recognizing the Union despite its decision to consolidate its operations, we concur with the Board's conclusion that the company committed an unfair labor practice by withdrawing that recognition. Under established principles, Central

Soya is bound to recognize the Union unless it can demonstrate a "rational basis in fact" for doubting the majority status of the Union. *Western Distrib. Co. v. NLRB,* 608 F.2d 397, 399 (10th Cir.1979). Central Soya's stated reason for withdrawing recognition from the Union was that it would be unfair to impose union representation on the new Cooper employees, arguably because union-affiliated employees would be in the minority at the new facility. The Board ruled that, on the contrary, union workers represented a majority of the consolidated work force and that the former Cooper employees were properly accreted into the bargaining unit.

■ The determination of whether a group of employees should be accreted into a bargaining unit involves the discretion of the Board, and that determination will not be set aside unless the Board has acted in an arbitrary and capricious manner. *NLRB v. R.L. Sweet Lumber Co.,* 515 F.2d at 794. In making this determination, the Board considers the functional integration of the business, centralized management structure, similarity of working conditions, collective bargaining history, local power to hire and fire, lack of employee interchange, and geographical distance. *Id.* When the new employees share a "community of interest" with unit employees and have no separate identity, they are then properly accreted into the bargaining unit and governed by its selected representative. *NLRB v. St. Regis Paper Co.,* 674 F.2d at 108; *Universal Sec. Instruments, Inc. v. NLRB,* 649 F.2d 247, 253 (4th Cir.), *cert. denied,* 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981).

We agree with the Board's conclusion that the former Cooper employees shared a sufficient community of interest to be accreted into the bargaining unit. The Board found that, unlike other instances where the Board had concluded accretion would be improper, the employees in this case did not perform different operations, use different types of specialized equipment, function in different work areas, or fall under different supervision. Rather, the two groups of employees were fairly well inte-

grated with few functional differences, and all were under Central Soya's centralized administration.

Once the Board has concluded that the above factors favor the accretion of the former Cooper employees, "the sole question is whether, when [these employees are] added, the majority status of the bargaining representative is cast into doubt." *NLRB v. Stevens Ford, Inc.,* 773 F.2d 468, 473 (2d Cir.1985). The Board found that "the employees sought to be accreted here do not numerically overshadow the existing bargaining unit." Central Soya strongly contests this finding, arguing that the Board's tally of union and nonunion employees was flawed.

■ Both parties have provided running head counts of union and nonunion employees for the period beginning on November 1, 1980, (the date both groups of employees were consolidated at Washington Street) and ending several months thereafter. For the purposes of determining whether Central Soya harbored a good faith doubt sufficient to dispel the presumption of the Union's continuing majority status, the relevant date is the date upon which Central Soya has consolidated its facilities and reached a substantial and representative complement of employees, November 3, 1980. *Lammert Indus.,* 578 F.2d at 1226; *Harte & Co.,* 278 N.L.R.B. 947, 949 (1986) (relevant date is when relocation is substantially complete); *see also Fall River Dyeing,* 107 S.Ct. at 2240 (majority support in successorship context to be determined when the new employer has reached a "substantial and representative complement" of employees); *NLRB v. Burns Int'l Sec. Servs., Inc.,* 406 U.S. 272, 295, 92 S.Ct. 1571, 1586, 32 L.Ed.2d 61 (1972).

■ At that time, Central Soya employed fifteen union employees at the First Street mill, including two employees who were on sick leave, and excluding the two grain elevator employees (both union members) who were later transferred to Washington Street. Thirteen nonunion employees worked at the Washington Street mill. The Board's inclusion of the sick-leave employees into this tally is consistent with its own

policy, *see Red Arrow Freight Lines, Inc.,* 278 N.L.R.B. 137 (1986); *see also Montgomery Ward & Co. v. NLRB,* 668 F.2d 291, 298 (7th Cir.1981), and is therefore not arbitrary and capricious, *NLRB v. Northeast Okla. Mfg. Co.,* 631 F.2d 669, 673–74 (10th Cir.1980). There being a majority of union employees at the time the two very similar groups were integrated, we conclude that the Board did not abuse its discretion in finding an accretion of the former Cooper employees into the bargaining unit. *NLRB v. R.L. Sweet Lumber Co.,* 515 F.2d at 794.

In addition, the Board's decision to accrete the Cooper employees is in accordance with the overriding policy behind the National Labor Relations Act to further industrial peace. *Fall River Dyeing,* 107 S.Ct. at 2223. The accretion doctrine is designed to preserve industrial peace by allowing an adjustment in bargaining units to conform to new industrial conditions without requiring an adversary election every time new jobs are created or other alterations in industrial routine are made. *NLRB v. Stevens Ford, Inc.,* 773 F.2d at 473. This doctrine goes hand-in-hand with the presumption of continued majority support for the union even after changes in the structure of the employer. *See NLRB v. Burns Int'l Sec. Servs., Inc.,* 272 U.S. at 279, 92 S.Ct. at 1577. As noted by the Supreme Court, such presumptions are particularly crucial during transition periods, when there is no formal and established bargaining relationship. *Fall River Dyeing,* 107 S.Ct. at 2234.

■ Finally, we concur in the Board's judgment that Central Soya committed an unfair labor practice by unilaterally announcing the transfer to Washington Street and outlining the effects of the transfer on employees without first bargaining with the Union. It is long-recognized that an employer must notify the union and offer it a reasonable opportunity to bargain about the effects of a plant closure on bargaining unit members. *NLRB v. R.L. Sweet Lumber Co.,* 515 F.2d at 795; *Universal Sec. Instruments, Inc. v. NLRB,* 649 F.2d at 257–58. We are not persuaded by Central Soya's argument that the Board's order forces it to engage in "decisional bargaining." The sequence of events in this case clearly shows that the company made and announced its decision with regard to such issues as pay, training, and benefits without prior consultation with the Union. Such unilateral action by the employer is unlawful, whether or not beneficial to employees, because it places the employer in the position of making choices for the employees which should be made via the bargaining representative. *Universal Sec. Instruments, Inc. v. NLRB,* 649 F.2d at 259.

We are not persuaded by Central Soya's further argument that the Union's demand for bargaining included only the issue of representation and that additional requests for bargaining would not have been futile. A union's request for bargaining need only make fairly clear that the employer is being requested to bargain. *Western Distrib. Co.,* 608 F.2d at 399 n. 5. Mr. Roe's correspondence with the company stated, "The purpose of this letter is to request that your Company meet with the Union committee to discuss the Company's recent acquisition of the Cooper facility and *the effect* it will have on our bargaining unit." The company's response to this letter indicated that it had already informed the employees that "there will be no loss of jobs, nor reduction of wages or benefits as a result of the acquisition." By this statement, the company clearly understood that the Union wished to address matters in addition to the Union recognition question. Further, after each Union request for bargaining about transition issues, the company acted prematurely by meeting directly with employees and presenting its position. At its final meeting with the Union, the company indicated that its position regarding non-recognition (and thus bargaining) was firm. In sum, the Board's conclusion that Central Soya violated the Act by refusing to bargain over the effects of the consolidation was well-reasoned and amply supported by the record.

The judgment of the National Labor Relations Board is AFFIRMED.