UNITED FOOD AND COMMERCIAL WORKERS LOCAL 545 HEALTH AND WELFARE FUND; its trustees, James A. Pettigrew, Shirley Williams, Carl Thompson, and Harold Schneider; and United Food and Commercial Workers; AFL–CIO–CLC, Local 545, Plaintiffs,

v.

HEALTH ENTERPRISES OF AMERICA, INC. d/b/a Carlson Tower Geriatric Center, Defendant-Third Party Plaintiff,

v.

GERIATRIC CENTER OF ST. LOUIS, INC., Rudy Nail and Mary Nail, Third Party Defendants.

UNITED FOOD AND COMMERCIAL WORKERS LOCAL 545 HEALTH AND WELFARE FUND; its trustees, James A. Pettigrew, Shirley Williams, Carl Thompson, and Harold Schneider; and United Food and Commercial Workers, AFL–CIO–CLC, Local 545, Plaintiffs,

v.

GERIATRIC CENTER OF ST. LOUIS, INC., Defendant.

Nos. 81–0030–C(C), 81–1162–C(C).

United States District Court,
E. D. Missouri, E. D.

July 12, 1982.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

MEREDITH, District Judge.

This matter is before the Court for a determination as to whether Health Enterprises of America, Inc., d/b/a Carlson Tower Geriatric Center, and/or Geriatric Center of St. Louis, Inc. should be held in contempt of this Court's judgment dated June 18, 1981 in Cause No. 81–0030–C(C); and for a judgment on the merits on the third party complaint in Cause No. 81–0030–C(C); and for a judgment on the merits in Cause No. 81–1162–C(C). The matter was tried before this Court, without a jury, on May 10 and 11, 1982. After full consideration of the pleadings, testimony and exhibits introduced at trial, the parties' briefs, and the applicable law, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff United Food and Commercial Workers, AFL–CIO–CLC, Local 545 (hereinafter, "Local 545") is and was at all relevant times a "labor organization" within the meaning of § 2(5) of the Labor Management Relations Act, 29 U.S.C. § 152(5) and represents employee members in the Eastern District of Missouri in an industry affecting commerce.

2. Plaintiff Health and Welfare Fund of Local 545 (hereinafter, "Health and Welfare Fund") is and was at all relevant times an employee benefit trust fund created by a trust agreement and was established pursuant to § 302 of the Labor Management Relations Act, 29 U.S.C. § 186. It exists for the purpose of providing group health insurance benefits to employees. The Health and Welfare Fund is an "employee benefit plan" within the meaning of § 3(3) of the Employee Retirement Income Security Act, 29 U.S.C. § 1002(3).

3. Plaintiffs James A. Pettigrew, Shirley Williams, Carl Thompson, and Harold Schneider are and were at all relevant times the trustees of the Health and Wel-

James Singer, St. Louis, Mo., for plaintiffs.

John Sandberg, Elton French, St. Louis, Mo., for defendant-third party plaintiff.

fare Fund and the "fiduciaries" of the fund within the meaning of § 402 of the Employee Retirement Income Security Act, 29 U.S.C. § 1102. James A. Pettigrew is also the president of Local 545.

4. Defendant and third party plaintiff Health Enterprises of America, Inc. (hereinafter, "HEA") is an Ohio corporation with its principal place of business in Warren, Ohio. Defendant Geriatric Center of St. Louis, Inc. (hereinafter, "Geriatric Center") is a Missouri corporation with its principal place of business in the State of Missouri. HEA and Geriatric Center are and were at all relevant times "employers" within the meaning of § 2(2) of the Labor Management Relations Act, 29 U.S.C. § 152(2), and § 3(5) of the Employee Retirement Income Security Act, 29 U.S.C. § 1002(5) in an industry affecting commerce.

5. Defendants Rudy Nail and Mary Nail are and have been since June on 1981 the sole corporate officers and directors of Geriatric Center. Rudy Nail and Mary Nail have since June of 1981 owned ninety-four percent of the capital stock of Geriatric Center. The remaining six percent is owned by Janet Parrett.

6. Peter C. Kern has been at all relevant times herein the president and sole shareholder of HEA. Neither Rudy Nail nor Mary Nail has ever held stock in or been an officer or director of HEA.

7. HEA operates a number of nursing homes in the States of Ohio and Missouri. From May 9, 1978 until June 1, 1981 it operated a nursing facility located at 4560 West Pine Blvd. in St. Louis, Missouri. HEA leased and continues to lease the building and real property at the 4560 West Pine facility from a Missouri corporation called Carlson Tower Geriatric Center, Inc. The corporate officers and directors of Carlson Tower are and were at all relevant times Peter C. Kern and his parents, Peter E. Kern and Dorothy Kern.

8. During all times material herein, the 4560 West Pine facility has had approximately 175 employees and has provided nursing home services primarily to patients who are on Medicare and Medicaid, which is funded through the State of Missouri, Division of Aging.

9. Local 545 signed a collective bargaining agreement with HEA covering certain employees at the 4560 West Pine facility. The effective dates of that agreement are August 9, 1979 through December 31, 1982. The agreement provides that HEA is to deduct union dues and initiation fees from employee wages and that HEA is to contribute to the Health and Welfare Fund of Local 545 in order to provide health insurance benefits to its employees. HEA is obligated under the agreement to file monthly reports to the Health and Welfare Fund from which eligibility for insurance benefits is determined. In addition, the agreement provides:

> If any owner or Employer sells, leases, or transfers his business or any part thereof, the Successor, Leasee (sic), or Transferee shall be bound fully by the terms of this Agreement, and shall be obliged to pay the wages and salaries in effect at the time of the sale, lease, or transfer, and shall assume all obligations of this Agreement in the place and stead of the Employer signatory hereto, and that the Union, as sole collective bargaining agent, shall be present at any discussion or the transaction of a sale or transfer of property.

10. On January 9, 1981 Local 545 and the Health and Welfare Fund filed Cause No. 81–0030–C(C) against HEA alleging that HEA had failed to pay contributions and submit monthly reports to the Health and Welfare Fund and that it had not paid dues and initiation fees to Local 545 as required by the collective bargaining agreement.

11. On January 27, 1981 Local 545 filed an unfair labor practice charge against HEA with the National Labor Relations Board (hereinafter, "NLRB") alleging, *inter alia*, that HEA had failed to pay health and welfare contributions, to file reports, to pay union dues and initiation fees, and to abide by three outstanding arbitration awards.

12. On February 13, 1981 Rudy Nail, as president of Management Behavior Analyst, Inc. (hereinafter, "MBA") executed a consulting agreement with HEA by which MBA agreed to provide consultation and advice to Carolyn Ellerbusch, administrator of the HEA facility at 4560 West Pine, in developing an effective management team and program at that facility. Nail was to spend two days per week at the facility. The original term of the consulting agreement was ninety days and commenced February 16, 1981.

13. On March 2, 1981 the Regional Director for Region 14 of the NLRB issued a Complaint and Notice of Hearing against HEA for the conduct alleged in the unfair labor practice charge discussed in Finding 11, *supra*, and set the matter for trial on March 23, 1981. The trial was not held. On or about March 24, 1981 HEA entered into a settlement stipulation admitting the allegations in the unfair labor practice charge. The stipulation provided that the settlement agreement would be incorporated into an order of the NLRB in Washington, D. C. and would later be filed as a consent order with the U. S. Court of Appeals for the Eighth Circuit. The NLRB issued its order on May 12, 1981, and the order was adopted by the Eighth Circuit on June 28, 1981.

14. On April 16, 1981 Local 545 and the Health and Welfare Fund moved for summary judgment in Cause No. 81–0030–C(C). On May 8, 1981 HEA's attorney, Edward Kancler, requested additional time to respond to the motion for summary judgment. By order dated May 13, 1981 this request was granted. However, no response was ever filed.

15. On or about May 11, 1981 Rudy Nail began negotiations with HEA for purchase or sublease of the nursing facility at 4560 West Pine. During the course of the negotiations, if not earlier, Nail was informed of the existence of HEA's collective bargaining agreement with Local 545. Nail admits that he had knowledge of the legal proceedings brought by Local 545 and the Health and Welfare Fund against HEA at this time and knew that a significant amount of money was involved, but he denies that he knew the details of the litigation. Nail apparently indicated to HEA that he would honor the collective bargaining agreement. On May 12, 1981 counsel for HEA informed counsel for Local 545 that HEA had found a potential purchaser for the 4560 West Pine facility and that the purchaser had agreed to honor the bargaining agreement.

16. The purchase of the 4560 West Pine facility never materialized. However, Nail agreed to sublease the facility from HEA commencing June 1, 1981.

17. Prior to negotiations for transfer of the 4560 West Pine facility to Nail, Peter C. Kern of HEA had formed Geriatric Center, a Missouri corporation. The lease held by HEA on the nursing facility was to be transferred to this corporation in order to facilitate certain reimbursements from the State of Missouri in connection with operation of the facility. After Nail agreed to sublease the nursing facility, Geriatric Center was transferred to Nail and his wife by Kern. There was no written agreement transferring Geriatric Center to the Nails. The Nails paid no money for Geriatric Center. Nail and HEA agreed that HEA would pay all obligations of the 4560 West Pine nursing facility accruing before June 1, 1981 and that Geriatric Center would pay all such obligations accruing on or after June 1, 1981.

18. On or about May 28, 1981 an attorney for HEA called counsel for Local 545 and advised him that the 4560 West Pine nursing facility would be leased and not sold, that it would be operated by Geriatric Center, and that the new operator would honor the collective bargaining agreement. HEA's attorney asked counsel for Local 545 to liquidate all outstanding obligations which HEA had to Local 545, its members, and the Health and Welfare Fund. HEA paid all such obligations due up to June 1, 1981.

19. Pursuant to a verbal agreement between Peter C. Kern and Rudy Nail, Geriatric Center commenced operation of the 4560 West Pine nursing facility on June 1,

1981. On June 2, 1981 Nail met with the employees of the facility who belonged to the bargaining unit represented by Local 545. Nail informed these employees that the name of the nursing home would be changed and that they would be paid twice a month instead of every other week, but that no major changes in personnel policy would be instituted at that time.

20. After Geriatric Center began operation of the 4560 West Pine nursing facility the name of the facility was changed, the pay period was changed, new accounts were established with the utility companies, new bank accounts were opened, and new licenses and certification were applied for from the State. Consultant and vendor contracts were placed in the name of Geriatric Center. New Federal and State tax identification numbers, unemployment insurance, Social Security and workman compensation accounts were applied for. A local accounting firm was retained. Various local licenses, permits, and the like were obtained to reflect the change in operators at the facility. In all other respects, however, the facility remained the same. There were no changes in the employees, supervisors, administrator, the patients, the vendors, or the physical plant. Janet Parrett, Director of Nursing under HEA, continued in that capacity when Geriatric Center assumed operation.

21. When Rudy Nail negotiated with HEA to assume operation of the 4560 West Pine nursing facility and commenced operation thereof, the facility was financially viable. The sublease to Nail and Geriatric Center was not made to infuse new capital into the facility. Indeed, Nail appears to have invested little, if any, of his own financial resources in the facility.

22. Pursuant to an oral agreement between Peter C. Kern and Rudy Nail, HEA paid the payroll for the 4560 West Pine nursing facility for the week ending June 5, 1981.

23. The formal sublease on the 4560 West Pine nursing facility was executed in St. Louis, Missouri on June 15, 1981 by Peter C. Kern, on behalf of HEA, and Rudy Nail, on behalf of Geriatric Center. Rudy Nail and Mary Nail also signed the sublease individually. By agreement of the parties, the sublease agreement was backdated to June 1, 1981. The sublease agreement does not specifically refer to the collective bargaining agreement between HEA and Local 545. It does state that "All accounts payable by Lessee (Geriatric Center) after May 31, 1981 shall be the responsibility of the Lessee."

24. On June 15, 1981 Rudy Nail issued to HEA two unsecured promissory notes. The first, for $15,000, was part payment of a $75,000 security deposit called for by the sublease agreement and was paid by Geriatric Center on July 24, 1981. The remainder of the security deposit was paid by Geriatric Center from revenues received through operation of the facility during the month of June, 1981. The second note, for $37,000, was issued in lieu of payment of the June, 1981 rent and is payable in twelve monthly installments commencing on June 20, 1982.

25. Several days prior to June 15, 1981 Peter C. Kern in the name of HEA made an oral, non-interest bearing, unsecured loan of $41,000 to Geriatric Center which was used primarily to meet the first two-week payroll following June 5, 1981. Geriatric Center repaid part of this loan by offsetting against it amounts owed by HEA to various public utilities. The remainder was repaid by check on or about August 21, 1981.

26. On June 15, 1981 Rudy Nail executed a trust agreement on behalf of Geriatric Center with HEA for Medicare and Medicaid payments made by the State of Missouri. Under the trust agreement, the payments made by the State would be sent to a bank, which would serve as trustee. The bank would deduct the lease payments due HEA from the State payments and make the remainder available to Geriatric Center.

27. Effective June 1, 1981, Geriatric Center had total control over operation of the 4560 West Pine facility.

28. On June 18, 1981 this Court granted summary judgment in favor of Local 545 and the Health and Welfare Fund and against HEA in Cause No. 81–0030–C(C). Under the terms of that judgment HEA was required to timely pay health and welfare contributions, file monthly reports, and pay union dues and initiation fees as required by the collective bargaining agreement with Local 545. The Court retained jurisdiction over the case to insure that the judgment was complied with.

29. From June of 1981 through the first payroll period of November, 1981 the payroll company doing Geriatric Center's payroll for the 4560 West Pine nursing facility continued to deduct union dues and initiation fees from employees' wages as had been done by HEA. These deductions were made on Rudy Nail's specific instructions. Geriatric Center also continued to include the amount of health and welfare contributions due the Health and Welfare Fund in its reports to the State of Missouri. (These amounts were used by the State in calculating the rate at which it reimbursed Geriatric Center for Medicaid patients. When Geriatric Center took over the 4560 West Pine facility, 98 percent of its patients were in the Medicaid program.) As of December 31, 1981, Geriatric Center's financial statement showed a deferred liability for health and welfare contributions to Local 545 of approximately $45,000.

30. Since June 1, 1981, neither HEA nor Geriatric Center has paid health and welfare contributions to or filed monthly reports with the Health and Welfare Fund or paid union dues and initiation fees to Local 545. The union dues and initiation fees deducted from employees' wages by Geriatric Center were simply placed in Geriatric Center's checking account. These dues and fees were returned to the employees in December of 1981.

31. Subsequent to Geriatric Center's commencement of operations at the 4560 West Pine nursing facility, the president of Local 545, James Pettigrew, repeatedly requested that Geriatric Center comply with this Court's judgment of June 18, 1981, sign the union collective bargaining agreement, and comply with the outstanding arbitration awards.

32. On or about June 19, 1981 James Pettigrew met with Rudy Nail in the offices of Carolyn Ellerbusch, who had continued as administrator of the 4560 West Pine facility, at the facility. At this meeting Nail indicated to Pettigrew that he would sign the collective bargaining agreement with Local 545. However, he refused to sign the copy of the agreement presented to him at that time by Pettigrew because it did not appear to him to be the same agreement signed by Peter C. Kern on behalf of HEA.

33. On July 23, 1981 Rudy Nail telephoned James Pettigrew from the St. Louis airport. During the conversation which ensued, Nail indicated to Pettigrew again that he would sign the collective bargaining agreement and that he would pay delinquent health and welfare contributions and union dues and initiation fees on July 30, 1981.

34. The previous day, July 22, 1981, Local 545 and the Health and Welfare Fund petitioned this Court for an order to show cause why HEA should not be held in contempt for violation of the terms of the June 18, 1981 judgment. Said petition was granted on June 22, 1981, and HEA was ordered to appear on August 14, 1981 to show cause why it should not be adjudged in contempt of Court. A hearing was duly held on August 14, 1981, and the Court took the matter under advisement.

35. On August 28, 1981 HEA moved to file a third party complaint against Geriatric Center, Rudy Nail, and Mary Nail in Cause No. 81–0030–C(C). The complaint sought a declaratory judgment that those third party defendants are responsible to Local 545 and the Health and Welfare Fund for all payments of union dues and health and welfare contributions due for the months beginning with June, 1981 and holding that said third party defendants shall indemnify and save HEA harmless from all claims of Local 545 and the Health and Welfare Fund regarding those payments and contributions.

36. On September 2, 1981 Rudy Nail informed James Pettigrew and the employees of the 4560 West Pine nursing facility that he would neither abide by nor execute the collective bargaining agreement with Local 545.

37. On or about September 9, 1981 Edward Kancler, attorney for HEA, had a telephone conversation with Elton French, who had been retained as the attorney for Geriatric Center. In this phone conversation, French stated that Rudy Nail had made representations to Local 545 that Geriatric Center would abide by the collective bargaining agreement, but that these representations had been made before Nail had obtained the advice of counsel. French stated that Nail may have to abide by the collective bargaining agreement as a matter of convenience or practicality.

38. On September 21, 1981 Local 545 and the Health and Welfare Fund filed Cause No. 81–1162–C(C) against Geriatric Center for monetary damages and injunctive relief relating to health and welfare contributions and payment of union dues and initiation fees past due for the months of June, July, and August of 1981 and due in future months under the collective bargaining agreement. The trustees of the Health and Welfare Fund were later joined as plaintiffs in this action and in Cause No. 81–0030–C(C).

39. The Court granted HEA leave to file its third party complaint against Geriatric Center, Rudy Nail, and Mary Nail on November 2, 1981. Contemporaneously, the Court ordered Cause No. 81–0030–C(C) and Cause No. 81–1162–C(C) to be consolidated.

## CONCLUSIONS OF LAW

1. This Court has personal jurisdiction over the parties to this litigation. Subject matter jurisdiction exists pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and § 502 of the Employee Retirement Income Security Act, 29 U.S.C. § 1132.

2. In Cause No. 81–1162–C(C) the Health and Welfare Fund, its trustees, and Local 545 seek to impose liability on Geria-

tric Center for health and welfare contributions, monthly reports, union dues, and initiation fees under the HEA-Local 545 collective bargaining agreement on three theories. The first is that Geriatric Center is the *alter ego* of HEA (Count I), the second is that Geriatric Center agreed to abide by the collective bargaining agreement (Count II), and the third is that Geriatric Center is bound by the collective bargaining agreement by operation of the successorship clause therein (Count III).

3. The Court is unpersuaded by the argument that Geriatric Center is the *alter ego* of HEA. Neither Rudy nor Mary Nail hold stock in or are officers or directors of HEA or Carlson Tower Geriatric Center, the company which owns the building and real property at the 4560 West Pine facility. Conversely, none of the shareholders, officers, or directors of HEA and Carlson Tower Geriatric Center hold stock in or are officers or directors of Geriatric Center. Rudy Nail was given complete control over operation of Geriatric Center after the sublease commenced. No evidence was presented that HEA has subsequently attempted to direct the operations of Geriatric Center. No suggestion has been made that HEA transferred the nursing facility to Geriatric Center in order to avoid its obligations to Local 545. *See NLRB v. Bell Company, Inc.*, 561 F.2d 1264, 1267–1268 (7th Cir. 1977).

4. The successorship clause in the Local 545–HEA collective bargaining agreement is not, in itself, sufficient basis for holding Geriatric Center to the substantive terms of that agreement. *Howard Johnson Co. v. Hotel Employees*, 417 U.S. 249, 258 n. 3, 94 S.Ct. 2236, 2241 n. 3, 41 L.Ed.2d 46 (1974).

5. The existence of the successorship clause, when viewed in the context of the other factors present in this case, does, however, compel the conclusion that Rudy Nail, on behalf of Geriatric Center, did impliedly agree to assume the obligations imposed by the agreement. These additional factors are as follows:

(a) When Rudy Nail negotiated the sublease for and commenced operation of the 4560 West Pine nursing facility, he had actual knowledge of the collective bargaining agreement executed by and between Local 545 and HEA and of the litigation arising therefrom.

(b) There was substantial continuity of the same business operations when Geriatric Center took over the 4560 West Pine nursing facility from HEA. The patients, vendors, and physical plant remained the same. Geriatric Center employed the same supervisors and administrator as HEA. Any physical or organizational changes at the nursing facility were of a minor nature.

(c) Geriatric Center retained the existing work force at the nursing facility. Local 545 clearly continued to represent members of this work force. Rudy Nail, on behalf of Geriatric Center, represented to employees covered by the collective bargaining agreement that personnel policies would not change after Geriatric Center commenced operation of the nursing facility.

(d) When Rudy Nail negotiated the sublease for and commenced operation of the 4560 West Pine facility he represented to HEA and Local 545 that he would abide by the collective bargaining agreement.

(e) On Nail's specific instructions, union dues and initiation fees continued to be deducted from employees' wages pursuant to the collective bargaining agreement after transfer of the facility from HEA to Geriatric Center. Geriatric Center continued to list health and welfare contributions in its reports to the State of Missouri for Medicaid reimbursement purposes.

(f) Nail did not repudiate or reject the collective bargaining agreement at the time he commenced operation of the 4560 West Pine nursing facility.

6. Based upon the totality of circumstances in this case, Geriatric Center is bound to comply with the substantive provisions of the collective bargaining agreement with Local 545, including the obligations to file monthly reports with and pay contributions to the Health and Welfare Fund and to pay union dues and initiation fees to Local 545. *Carter v. CMTA-Molders & Allied Workers Health and Welfare Trust,* 489 F.Supp. 704, 708–709 (N.D.Cal.1980); *John Wiley & Sons v. Livingston,* 376 U.S. 543, 550–551, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964); *Golden State Bottling v. NLRB,* 414 U.S. 168, 184–185, 94 S.Ct. 414, 425, 38 L.Ed.2d 388 (1973); *NLRB v. Winco Petroleum,* 668 F.2d 973 at 977–979 (8th Cir. 1982). *Cf. Bartenders & Culinary Workers v. Howard Johnson,* 535 F.2d 1160 (9th Cir. 1976) (purchaser of business who continued operations, retaining entire work force, held not bound by collective bargaining agreement where, at time of acquisition, it gave notice that it refused to recognize the union or be bound by the agreement). Geriatric Center's obligations under the collective bargaining agreement commenced on June 1, 1981, when its sublease began and it assumed control of the 4560 West Pine nursing facility.

7. Geriatric Center, as sublessee, is in privity with HEA, and it had notice of this Court's judgment dated June 18, 1981 in Cause No. 81–0030–C(C). Accordingly, it is bound to comply with the terms of the injunction issued therein. Fed.R.Civ.P. 65(d).

8. Geriatric Center shall be required to file monthly reports with and make contributions to the Health and Welfare Fund and to pay union dues and initiation fees to Local 545 in accordance with the collective bargaining agreement for the months of June, 1981 through December, 1982, when the agreement expires. Delinquent reports, contributions, and dues and initiation payments for the months of June, 1981 through June, 1982 shall be made to the Health and Welfare Fund and Local 545 by Geriatric Center within fifteen days of this judgment. With respect to subsequent months, Geriatric Center shall be ordered to timely file monthly reports with and make contributions to the Health and Welfare Fund and to timely pay dues and initiation fees to Local 545 in accordance with injunction contained in the Court's June 18, 1981 judgment.

9. Should Geriatric Center fail or refuse to make contributions and payments to the Health and Welfare Fund and Local 545 as directed herein, HEA shall be jointly and severally liable to the Health and Welfare Fund and Local 545 for any such contributions and payments due and owing. This obligation derives from the collective bargaining agreement itself, from HEA's representations to Local 545 that the agreement would be honored by the new operator, and from the need to insure that the union and the employees at the nursing facility will be fully protected. *See Golden State Bottling v. NLRB, supra,* at 186–187, 94 S.Ct. at 426.

10. To the extent that HEA is required to make contributions and payments to the Health and Welfare Fund and Local 545 under the collective bargaining agreement for the months of June, 1981 through December, 1982 as the result of Geriatric Center's failure or refusal to do so, HEA shall be indemnified by Geriatric Center and Rudy Nail, individually.

11. Subject to the aforementioned conditions, judgment shall be entered in favor of the Health and Welfare Fund, its trustees, and Local 545 and against Geriatric Center in Cause No. 81–1162–C(C). Judgment shall be entered in favor of HEA and against Geriatric Center and Rudy Nail, individually, on its third party claim in Cause No. 81–0030–C(C).

12. The Court shall not hold HEA or Geriatric Center in contempt of its judgment of June 18, 1981 in Cause No. 81–0030–C(C) as the result of their actions with respect to contributions and payments to the Health and Welfare Fund and Local 545 prior to the date of this judgment.

13. The Health and Welfare Fund, its trustees, and Local 545 shall be awarded their reasonable costs and attorney's fees in Cause No. 81–1162–C(C). Their request for interest on delinquent payments and contributions shall be denied.

14. Each party shall stand its own costs and attorney's fees on the third party complaint in Cause No. 81–0030–C(C) and on the contempt motion.